[No. 44853. En Banc. June 22, 1978.]

GENERAL ELECTRIC CREDIT CORPORATION, *Respondent*, v. DONALD W. ISAACS, ET AL, *Defendants*, ROBERT WELCOME, ET AL, *Appellants*, THE UNITED STATES OF AMERICA, *Respondent*.

*M. Wayne Blair* (of *Montgomery, Purdue, Blankinship & Austin*), for appellants.

*Myron C. Baum, Acting Assistant Attorney General, Gilbert E. Andrews, Crombie J. D. Garrett,* and *Wynette J. Hewett, Department of Justice (J. Ronald Sims, United States Attorney* and *Thomas B. Russell, Assistant United States Attorney,* of counsel), for respondent.

HAMILTON, J.—This appeal involves a question of federal law. We are asked to decide whether a federal tax lien has priority over a state–created security interest which was perfected at the time notice of the tax lien was filed, but which later became unperfected. General Electric Credit Corporation (GE) is a mere stakeholder; the real parties in interest are the United States and Robert Welcome and his wife. The debtor, Donald W. Isaacs, has not appeared and claims no interest. The trial court, upon stipulated facts and cross motions for summary judgment, gave priority to the tax liens of the United States. We affirm.

The debtor, Isaacs, was engaged in the business of buying and selling mobile homes. In order to finance his business, he entered into an agreement with GE whereby GE purchased his installment sales contracts. As part of this financing arrangement, a reserve fund was created as security for losses on the installment contracts. When GE liquidated the account, the reserve fund contained $6,717. GE subsequently received notices of competing claims to the fund from the United States and Welcome. The interest of the United States arose by reason of certain tax liens in the

amount of $16,804.77. The conflicting interest of Welcome arose from an assignment of the fund dated October 10, 1968, as security for loans of $8,569 and future advances. The dates pertinent to this case are as follows:

On February 19, 1968, after assessment and demand, the Internal Revenue Service filed notice of the first tax lien. On October 10, 1968, the debtor, Isaacs, executed an assignment for security purposes to Welcome of all sums then or thereafter placed in the GE reserve account. This assignment was expressly subject to the February 19, 1968, tax lien, and Welcome does not challenge the priority of the initial tax lien. Welcome perfected his interest by filing a standard form Uniform Commercial Code financing statement on October 28, 1968. On January 8 and August 19, 1969, and on February 28 and July 7, 1972, again after assessment and demand, notices of additional tax liens were filed. Welcome failed to file a continuation financing statement on or before the expiration of the period of perfection. RCW 62A.9–403(2) and (3).[1] Thus, under Washington State law, his interest became unperfected. On January 4, 1974, Welcome again perfected his interest by duly filing a new financing statement.

---

[1] "(2) A filed financing statement which states a maturity date of the obligation secured of five years or less is effective until such maturity date and thereafter for a period of sixty days. Any other filed financing statement is effective for a period of five years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of such sixty day period after a stated maturity date or on the expiration of such five year period, as the case may be, unless a continuation statement is filed prior to the lapse. Upon such lapse the security interest becomes unperfected. A filed financing statement which states that the obligation secured is payable on demand is effective for five years from the date of filing.

"(3) A continuation statement may be filed by the secured party (i) within six months before and sixty days after a stated maturity date of five years or less, and (ii) otherwise within six months prior to the expiration of the five year period specified in subsection (2). Any such continuation statement must be signed by the secured party, identify the original statement by file number and state that the original statement is still effective. Upon timely filing of the continuation statement, the effectiveness of the original statement is continued for five years after the last date to which the filing was effective whereupon it lapses in the same manner as provided in subsection (2) unless another continuation statement is filed prior to such lapse. Succeeding continuation statements may be filed in the

In asserting priority respondent United States relies on federal law and claims that upon the lapse of the effectiveness of the financing statement, the tax liens acquired priority over the competing security interest of appellant Welcome.

Appellant argues that the order of priorities is fixed as of the date of filing notice of a tax lien and not subject to change by later events such as lapse. He further asserts that, even if priorities are not fixed, the question of priorities is governed by RCW 62A.9–201 and RCW 62A.9–301.[2] Welcome claims the United States should be denied priority because it fails to meet the tests of RCW 62A.9–301.

The question of priority between a federal tax lien and a state–created security interest must be answered with reference to federal law. *Aquilino v. United States,* 363 U.S. 509, 4 L. Ed. 2d 1365, 80 S. Ct. 1277 (1960); *Johnson Serv. Co. v. Roush,* 57 Wn.2d 80, 355 P.2d 815 (1960). The applicable federal law is contained in the Internal Revenue Code, which provides that a tax lien in favor of the United States arises at the time assessment is made on all property and rights to property belonging to a taxpayer who neglects or refuses to pay taxes after demand. Internal Revenue Code of 1954, 26 U.S.C. §§ 6321, 6322 (1970). This tax lien continues in full force and effect until the tax liability is extinguished, 26 U.S.C. § 6322, and it attaches to all after–

---

same manner to continue the effectiveness of the original statement. Unless a statute on disposition of public records provides otherwise, the filing officer may remove a lapsed statement from the files and destroy it." RCW 62A.9–403(2) and (3).

[2] "Except as otherwise provided by this Title a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors. Nothing in this Article validates any charge or practice illegal under any statute or regulation thereunder governing usury, small loans, retail installment sales, or the like, or extends the application of any such statute or regulation to any transaction not otherwise subject thereto." RCW 62A.9–201.

"(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of

". . .

"(b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected". RCW 62A.9–301(1)(b).

acquired property of the delinquent taxpayer. *Seaboard Surety Co. v. United States,* 306 F.2d 855 (9th Cir. 1962). However, the Federal Tax Lien Act of 1966, 26 U.S.C. § 6323(a) (1970), limits the effect of the lien granted by 26 U.S.C. §§ 6321, 6322. That section states that the tax lien "shall not be valid as against any . . . holder of a security interest . . . until notice thereof . . . has been filed." 26 U.S.C. § 6323(a).

The code also provides the definition of security interest, which, according to federal law, we must utilize for purposes of this discussion.[3]

> The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. § 6323(h)(1).

■ Under the local law referred to by section 6323(h)(1), Welcome's interest became protected against a subsequent judgment lien by the filing of a valid Uniform Commercial Code financing statement. RCW 62A.9–301, RCW 62A.9–302.[4] The security interest remained protected so long as the filing was effective. RCW 62A.9–403(2). When the effectiveness of the financing statement involved here lapsed, Welcome was no longer protected against a subsequent judgment lien, hence he no longer had a federally defined security interest.

---

[3]As used herein, the term security interest will refer to the interest defined by the Federal Tax Lien Act of 1966, 26 U.S.C. § 6323(h)(1) (1970). For an analysis of the corresponding definition of a security interest under the Uniform Commercial Code (1962 version), *see* Coogan, *The Effect of the Federal Tax Lien Act of 1966 upon Security Interests Created under the Uniform Commercial Code,* 81 Harv. L. Rev. 1369, 1382 (1968).

[4] "(1) A financing statement must be filed to perfect all security interests except the following:

Welcome argues, however, that priorities are irrevocably fixed on the date when notice of the tax lien is filed, and a later lapse in effectiveness of the financing statement does not alter the priority granted by federal law to holders of a security interest. This result, he argues, can be reached by a

"(a) a security interest in collateral in possession of the secured party under RCW 62A.9–305;

"(b) a security interest temporarily perfected in instruments or documents without delivery under RCW 62A.9–304 or in proceeds for a ten day period under RCW 62A.9–306;

"(c) a purchase money security interest in farm equipment having a purchase price not in excess of two thousand five hundred dollars; but filing is required for a fixture under RCW 62A.9–313 or for a motor vehicle required to be licensed;

"(d) a purchase money security interest in consumer goods; but filing is required for a fixture under RCW 62A.9–313 or for a motor vehicle required to be licensed;

"(e) an assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor;

"(f) a security interest of a collecting bank (RCW 62A.4–208) or arising under the Article on Sales (RCW 62A.9–113) or covered in subsection (3) of this section.

"(2) If a secured party assigns a perfected security interest, no filing under this Article is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor.

"(3) The filing provisions of this Article do not apply to a security interest in property subject to a statute

"(a) of the United States which provides for a national registration or filing of all security interests in such property; or

"(b) of this state which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property.

"(4) A security interest in property covered by a statute described in subsection (3) can be perfected only by registration or filing under that statute or by indication of the security interest on a certificate of title or a duplicate thereof by a public official.

"(5) Part 4 of this Article does not apply to a security interest in property of any description created by a deed of trust or mortgage made by any corporation primarily engaged in the railroad or street railway business, the furnishing of telephone or telegraph service, the transmission of oil, gas or petroleum products by pipe line, or the production, transmission or distribution of electricity, steam, gas or water, but such security interest may be perfected under this Article by filing such deed of trust or mortgage in the office of the secretary of state. When so filed, such instrument shall remain effective until terminated, without the need for filing a continuation statement. Assignments and releases of such instruments may also be filed in the office of the secretary of state. The secretary of state shall be a filing officer for the foregoing purposes, and the uniform fee for filing, indexing and furnishing filing data pursuant to this subsection shall be five dollars." RCW 62A.9–302.

literal reading of 26 U.S.C. § 6323(a) set out previously. Under that section a federally defined security interest coming into existence before the filing of notice of a tax lien has priority over the later filed tax lien. We do not believe, however, that the Federal Tax Lien Act affords continued priority to an interest which, because of a lapsed financing statement, has ceased to exist as a federally defined security interest. 26 U.S.C. § 6323(a) states the date upon which the tax lien has validity against a security interest; however, it does not dictate that priorities are fixed as of that date.

We hold therefore the priority granted to a federally defined security interest may be lost by subsequent acts which render it unperfected under local law. Once a security interest becomes unperfected, it is vulnerable to the federal tax liens which were subordinate during perfection. The order of priorities is not irrevocably fixed on the date when notice of a tax lien is filed. This holding is supported by the Federal Tax Lien Act and principles of commercial law.

We note that prior to the Federal Tax Lien Act of 1966, 26 U.S.C. § 6323 provided no protection for the security interest. Congress, in passing the act, sought to "conform the lien provisions of the internal revenue laws to the concepts developed in this [sic] Uniform Commercial Code." 3 U.S. Code Cong. & Ad. News 3722 (1966). *See also* Coogan, *The Effect of the Federal Tax Lien Act of 1966 upon Security Interests Created under the Uniform Commercial Code,* 81 Harv. L. Rev. 1369 (1968). In so doing, limited protection was afforded to the holder of a security interest. Significantly, Congress extended protection *only* to holders of a security interest which had achieved such dignity that under local law the interest would be protected against a subsequent judgment lien. 26 U.S.C. § 6323(h)(1); *United States v. Trigg,* 465 F.2d 1264 (8th Cir. 1972). Thus, for federal tax purposes, a security interest does not even exist unless section 6323(h)(1) is met and unperfected security interests are subordinate to the federal tax lien. 3 U.S.

Code Cong. & Ad. News, *supra. United States v. Trigg, supra.*

Because Congress extended protection only to security interests of a special status and subordinated the unperfected security interest, we think it is clear that Congress intended to give a secured creditor an opportunity to maintain priority by maintaining perfection under local law. Failure to maintain perfection should result in loss of the preferred status which holders of a security interest are granted. When that status is lost, we believe it is clear that the tax lien gains priority over competing interests which lack the necessary status.

In *United States v. Administrator of the Estate of McCall,* 313 F. Supp. 1399 (M.D. Pa. 1969), the court accepted without discussion the argument that priority may be lost by operation of events occurring subsequent to filing notice of the tax lien. In that case the government argued that the lienor lost its priority by failing to revive the judgment within 5 years as required by local law. The lienor admitted it had failed to revive its lien, but asserted the government lulled it into permitting its perfection to lapse. The court found insufficient evidence of government misrepresentation and held, at page 1403: "Therefore, the Government is not equitably estopped from asserting its acquired priority of lien to the real estate." Thus, the acquisition of priority does not appear to be a novel concept.

In the instant case, after the effectiveness of the financing statement lapsed, Welcome's October 28, 1968, security interest became unperfected under local law and vulnerable to a subsequent judgment lien. RCW 62A.9–403(2); RCW 62A.9–301(1)(b). It therefore ceased to exist as a federally defined security interest. 26 U.S.C. § 6323(h)(1). 3 U.S. Code Cong. & Ad. News, *supra.* At this point, the tax liens of the United States *acquired priority* over Welcome's unperfected interest. Welcome may have succeeded in gaining a new federally defined security interest by perfection on January 4, 1974; however, all notices of the tax liens

predated this interest. Thus, all the tax liens are prior to the January 4, 1974, security interest.

Although the Uniform Commercial Code (1962 version) controls this decision only in so far as federal law dictates that we must look to local law in determining perfection, the treatment of competing state–created security interests under the code also accords with our holding. RCW 62A.9–403(2) provides that

> [t]he effectiveness of a filed financing statement lapses on the expiration of such sixty day period after a stated maturity date or on the expiration of such five year period, as the case may be, unless a continuation statement is filed prior to the lapse. Upon such lapse the security interest becomes unperfected.

Both official Uniform Commercial Code comments and Washington comments indicate that a secured party may, upon lapse, find his unperfected security interest vulnerable to an interest which was subordinate during the period of perfection. Washington Comment 2, RCWA 62A.9–403, Official Comment 3. Thus, quite clearly the drafters believed that in order to maintain the rights of a perfected secured creditor one must maintain an effective filing. In holding that priorities are not fixed, we recognize the soundness of encouraging diligence in maintaining perfection.

The appellant next argues that even though he may have lost the status of a perfected party, nevertheless, the government cannot gain priority because it had knowledge of Welcome's interest. In support of this he relies on RCW 62A.9–301. Under that section knowledge on the part of a lien creditor of an existing, unperfected security interest can result in subordination of the lien. Courts have analyzed the interrelationship of Uniform Commercial Code § 9–301 and the Federal Tax Lien Act in two ways. One approach has been to treat the United States as an actual lien creditor and apply section 9–301 in order to ascertain priority. *United States v. Trigg, supra; United States v. Hunt,* 513 F.2d 129 (10th Cir. 1975). Using this approach,

actual knowledge on the part of the government of an unperfected security interest results in subordination of the tax lien.

Another approach is to focus on the status of the state–created security interest. Using this analysis an interest has priority over a tax lien only if the interest is protected under local law against *any* hypothetical lien creditor. Knowledge on the part of the government is immaterial. *United States v. Sterling Nat'l Bank & Trust Co.*, 360 F. Supp. 917 (S.D.N.Y. 1973), *modified on other grounds*, 494 F.2d 919 (2d Cir. 1974).

■ We believe that this approach is correct and that 26 U.S.C. § 6323(h)(1) describes only the status the state–created security interest must obtain in order to have priority over a tax lien. The interest must be able to prevail over any hypothetical lien creditor or it has not met the test of that section. The government is not required by that section to meet the tests of Uniform Commercial Code § 9–301 in order to assert its priority; thus, knowledge on the part of the government is immaterial.[5] This conclusion was also reached by the court in *Dragstrem v. Obermeyer*, 549 F.2d 20, 26 (7th Cir. 1977), where the Court of Appeals relied on the language of the lower court's memorandum opinion. We find that reasoning to be sound and adopt it here:

> The legislative history, S.Rep.1708, U.S. Code Cong. & Admin. News, 89th Cong., 2d Sess. p. 3722 (1966), makes it clear that the purpose was to bring federal tax lien law into conformity with the concepts of the Uniform Commercial Code, and thereby to permit more certainty and stability in business affairs for secured creditors. The specific legislative intent was to enable creditors to protect certain types of security interests

---

[5]We note that the 1972 official text of the Uniform Commercial Code was amended to make knowledge of a security interest on the part of a lien creditor immaterial. This amendment has not been adopted in Washington State.

For a discussion of the status which a security interest must attain in order to take priority over a tax lien under 26 U.S.C. § 6323(h)(1), *see* L. Kalevitch, *The "Security Interest" under the Federal Tax Lien Law*, 2 Lending Law Forum 11 (1977).

against subsequent federal tax liens, and to do so by taking the same steps already necessary under state law to protect their interests against various other types of competing claims. This legislative policy would in no way be enhanced by a holding that a properly filed federal tax lien does not have priority over an unperfected security interest simply because the government has knowledge of the security interest before the tax lien is filed. Conversely, whatever the policy of the Uniform Commercial Code in making an exception as to priority when a lien creditor has knowledge of an unperfected security interest, this cannot apply to the tax lien situation as the government does not rely on any notice, actual or record, in making a determination to become a creditor, or to create and file a tax lien. The rationale of the new, Section 6323(a), federal priority rule centers on not disrupting the stability of business relationship where that stability already exists under state law, and not on the irrelevant fact of the existence or not of any kind of notice to the government of outstanding security interests.

Accordingly, we reject the argument that the government cannot gain priority because of its knowledge of Welcome's security interest.

Similarly, any argument that the government must become a lien creditor before perfection of a security interest under RCW 62A.9-301 (Uniform Commercial Code § 9-301) is without merit. That section, as we have stated, is inapplicable to the government.

The judgment of the trial court is accordingly affirmed.

Wright, C.J., and Rosellini, Stafford, Utter, Brachtenbach, Horowitz, Dolliver, and Hicks, JJ., concur.