In the Matter of The INTERNATIONAL GOLD BULLION EXCHANGE, INC., a Florida corporation, et al., Debtors.

Earl FAIRCLOTH, Trustee, Plaintiff,

v.

Mr. and Mrs. F.F. BOUCHARD, Defendants.

Bankruptcy Nos. 83–00754–BKC–SMW to 83–00756–BKC–SMW. Adv. No. 85–0536–BKC–SMW–A.

United States Bankruptcy Court, S.D. of Florida,

Sept. 30, 1985.

Stewart P. Chambers, Fort Lauderdale, Fla. for Trustee.

William C. Stalions, Fort Lauderdale, Fla. for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This cause having come on before the Court on September 4, 1985, upon the Complaint of the Trustee to avoid a preferential transfer pursuant to Section 547 of the Bankruptcy Code and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the argument of counsel and being otherwise fully advised in the premises does hereby make the following Findings of Fact and Conclusions of Law.

On April 27, 1983, The International Gold Bullion Exchange, Inc. (the "Debtor"), filed its Petition for Relief pursuant to Chapter 11 of the Bankruptcy Code. The Debtor and the Defendants had entered into a contract on November 1, 1982 for the sale and purchase of 1 $500.00 Face Coin Bag, 1 $100.00 Face Coin Bag and 1 one ounce gold Maple Leaf. The Defendants paid the Debtor the purchase price of $5,896.00 on November 4, 1982. The Debtor issued to the Defendants a Precious Metals Certificate of Ownership on November 4, 1982.

On March 8, 1983, after repeated demands by the Defendants, the Debtor delivered to the Defendants 1 $540.00 Face Coin Bag and 1 one ounce gold Krugerrand, together with 2 ten ounce silver Engelhard bars, in adjusted satisfaction of the November 1, 1982 precious metals contract.

■ The Court finds that the Complaint alleges all of the elements required under Section 547 of the Bankruptcy Code. *Matter of Advance Glove Mfg. Co.*, 42 B.R. 489 (Bankr.E.D.Mi.1984); *In re Saco Local Development Corp.*, 30 B.R. 870 (Bankr.D. Me.1983); *In re Satterla*, 15 B.R. 166 (Bankr.W.D.Mi.1981). The Court finds that the Defendants received property of the Debtor in satisfaction of an antecedent debt created on November 1, 1982, and that the date of delivery of the precious metals was within ninety (90) days next preceding the filing of the Petition by the Debtor for Chapter 11 protection, as is required under Section 547(b)(4)(A) of the Code. Additionally, the Court finds that the Defendants' receipt of these precious metals allowed the Defendants to receive more than they would have received had the Debtor filed its Petition under Chapter 7 of the Code (Liquidation) and there had been a distribution to unsecured creditors under said Chapter. The Court further finds that the Debtor was insolvent on the day of the Debtor's transfer of its precious metals to Defendants, under the presumption of insolvency under Section 547(f) of the Code, which presumption the Defendants left unrebutted.

The Court considered the following Affirmative Defenses, all others either having been abandoned or deemed to be without merit:

(1) There was no transfer of the Debtor's assets by virtue of the existence of a contract of bailment as between the Debtor and the Defendants as of the date of the issuance of the Certificate of Precious Metals Ownership;

(2) The within action by the Trustee is barred under Section 547(c)(1) of the Code

as being a contemporaneous transaction for new value;

(3) Whether the Debtor's alleged fraudulent practices can be imputed to the Trustee such as to defeat the Trustee's authority to recover preferential transfers under Section 547 of the Code;

(4) Whether this transaction falls within the limitations on avoiding powers of Section 546(e) of the Code;

(5) Whether the doctrine of equitable estoppel precludes any assertion by the Trustee of an avoidable preferential transfer.

The Court finds that the evidence, testimony and the law does not support the Defendants' Affirmative Defenses outlined above. At the outset, there are certain immutable characteristics of a contract for bailment, chief amongst them being that in order for a contract for bailment to arise it must be consensual and mutually agreed upon between the parties. *Rudisill v. Taxicabs of Tampa, Inc.*, 147 So.2d 180 (Fla. 2nd DCA 1962). Additionally, a contract for bailment, once mutually agreed upon, thereafter requires a complete delivery of the bailed item into the possession, custody or control of the bailee. *Blum v. Merrill Stevens Dry Dock Company,* 409 So.2d 192 (Fla. 3rd DCA 1982); *Puritan Insurance Company v. Butler Aviation-Palm Beach, Inc.*, 715 F.2d 502 (11th Cir. 1983). Without the foregoing elements, there can be no contract of bailment.

■ In the instant case, it is evident from the Defendants' Answers to Interrogatories, as well as from Plaintiff's Exhibits admitted into evidence, that there existed no consensual and mutually agreed upon contract for bailment between these Defendants and the Debtor with regard to the precious metals purchased by the Defendants on November 1, 1982. The Defendants admit that there existed no other contract or understanding with the Debtor, other than the precious metals purchase agreement itself, as regards the precious metals purchased on the aforedescribed date (Defendants' Answers to Plaintiff's Interrogatories, paragraph 6); accordingly,

without a consensual and mutually agreed upon contract for bailment, no such bailment relationship could have arisen with respect to the subject transaction. The relationship between the Defendants and the Debtor consisted of nothing more than a purchase and sale of certain precious metals which the Debtor ultimately delivered to the Defendants on March 8, 1983, in satisfaction of the November 1, 1982 antecedent contract.

It is perhaps of greater importance to take note of the inventory sheets of the Debtor admitted into evidence by the Plaintiff. The Debtor's precious metals inventory sheets for both November 1 and November 4, 1982 are highly relevant in that they reflect the conspicuous absence of the Defendants as holders of any precious metals with the Debtor. When taken together, these inventory sheets of the Debtor corroborate the fact that the Debtor routinely would only purchase precious metals necessary to satisfy those particular antecedent precious metals contracts on the day the Debtor intended to satisfy those contracts. The Defendants' Precious Metals Certificate of Ownership dated November 4, 1982, related only to non-existent, non-identified goods to a contract, except to the extent said precious metals became identified to Defendants' contract on March 8, 1983, the date of shipment by the Debtor. On this basis, no contract of bailment could have arisen in the instant case and, therefore, no such defense is available to the Defendants.

■ Identification of goods to a contract is important for yet another reason. Defendants' foregoing argument of bailment is really the mirror image of a contemporaneous exchange defense as is provided for under Section 547(c)(1) of the Bankruptcy Code, which defense is similarly unavailable to these Defendants. It should be noted that Subsection (e)(1)(B) of Section 547 specifies that a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee. A

Florida appellate decision has reached the conclusion that a judgment creditor, i.e., a creditor on a simple contract, cannot reach property of a Debtor-Seller in a contest between that judgment creditor and a buyer of the goods when such goods have been *identified* to the contract (emphasis supplied). *Exchange National Bank of Tampa v. Alturas Packing*, 269 So.2d 733 (Fla. 2nd DCA 1972). This case is an interpretation of Section 672.402, Fla.Stat. Identification of the goods to the contract is governed by Section 672.501(1)(b), Fla.Stat., in cases such as this where the goods are "future" goods and this identification occurs when the goods are shipped. In this particular case, the precious metals were identified, as were evidenced by the Debtor's inventory sheets admitted into evidence, only on the date of shipment, that being March 8, 1983, on which date the Debtor purchased the precious metals necessary to satisfy Defendants' precious metals contract. These exhibits clearly show an opening inventory of zero on the above described date, the acquisition of those precious metals necessary to satisfy various precious metals contracts, the shipment in satisfaction of these contracts, and a closing inventory of zero. Therefore, it would have been impossible to identify the precious metals to the Defendants' precious metals contract prior to the date of shipment. As such, the Precious Metals Certificate of Ownership could not have conveyed any ownership interest to the Defendants until such date of shipment; i.e., when the subject precious metals were identified to Defendants' contract. The fact that title to the subject precious metals could not have passed to Defendants until there had been identification of the precious metals contract on March 8, 1983, defeats the Defendants' real argument that the instant transfer of the Debtor's precious metals to Defendants on said date was, in reality, a contemporaneous exchange for the purchase price paid the Debtor by the Defendants. The Defendants' anticipated delivery of the subject precious metals was within 50 days from November 4, 1982, the date the Defendants

paid their consideration for the precious metals to the Debtor. However, the shipments on March 8, 1983 were not within the contemplated shipment terms of Defendants' contract with the Debtor and were clearly shipments not contemporaneous with the November 4, 1982 paid consideration under the precious metals contract dated November 1, 1982. Thus, these shipments cannot be considered contemporaneous within the meaning of Section 547(c)(1). *In re General Office Furniture Wholesalers*, 37 B.R. 180 (U.S.B.C., Va.1984); *In re Saco Local Development Corporation*, 30 B.R. 870 (U.S.B.C.Me.1983).

■ The Defendants further reliance upon the argument that the Debtor's alleged fraudulent practices can be imputed to the Trustee such as to impair or otherwise bar the Trustee's avoidance powers is ill-considered and misplaced. The Defendants are correct when they state that the Debtor's estate is comprised of all legal or equitable interests of the Debtor in property as of the commencement of the case, as is provided for under Section 541(a)(1) of the Bankruptcy Code. Additionally, a Trustee is derivatively entitled to hold for the general unsecured creditors all legal and equitable interests of the Debtor under the provisions of Section 544(a) of the Bankruptcy Code. Under Section 541, a Trustee's rights are derivative from the rights of the Debtor; under Section 544(a), a Trustee's rights are derivative from the rights of creditors. *In re Great Plains Western Ranch Company, Inc.*, 38 B.R. 899 (U.S.B.C.Ca.1984). Insofar as personal property is concerned, one must look to the state law which controls priority amongst creditors in order to determine the extent of the Trustee's authority. *4 Collier on Bankruptcy*, Section 541.02 (15th Ed.1984).

Section 544(a)(1) provides as follows:

The Trustee shall have as of the commencement of the case, and without regard to any knowledge of the Trustee or of any creditor, the rights and powers of, or may avoid any transfers of property of the Debtor or any obligation incurred by the Debtor that is voidable by—

(1) a creditor that extends credit to the Debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such creditor exists.

In pari materia with the foregoing is Section 679.301(1)(b), Fla.Stat., which provides as follows:

(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of:

(b) A person who becomes a lien creditor before the security interest is perfected.

Section 679.301(3), Fla.Stat., lastly, provides:

A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy, or the like and includes an assignee for the benefit of creditors from the time of assignment, and a Trustee in bankruptcy from the date of the filing of the Petition or a receiver in equity from the time of appointment.

It is clear, from the foregoing, that a trustee in bankruptcy is a hypothetical lien creditor, without notice, as to all legal and equitable interests the Debtor had as of the date of the Debtor's filing of its Petition. Moreover, a trustee in bankruptcy takes the foregoing interests on behalf of the general unsecured creditors without imputation of knowledge of the debtors activities or practices which may or were in actual or constructive fraud of a particular creditor of the debtor. *In re Investment Sales Diversified, Inc.*, 49 B.R. 837 (U.S.B. C.Mn.1985); *In re Great Plains Western Ranch Company, Inc.*, 38 B.R. 899 (U.S.B. C.Ca.1984). This is so because a trustee, like a debtor-in-possession, is conceptually separate for purposes of bankruptcy law; indeed, it is well established that even a debtor-in-possession which is, in actuality, the same entity as the debtor is nevertheless deemed to be separate and distinct from the debtor under bankruptcy law, and

is armed with Section 544 powers without regard to any notice or knowledge of the Debtor's practices. *In re Great Plains Western Ranch Company, Inc.*, supra, at p. 904.

The Defendants' argument, in light of the foregoing authority establishing the Trustee's powers under Section 544 of the Bankruptcy Code, does not withstand the light of scrutiny and substantively lacks merit. It should not be overlooked that absolutely no proof or evidence of the Debtor's fraud was introduced such that could premise the Defendants' argument that it was through the Debtor's artifice or fraud that the Debtor obtained an interest in the subject precious metals now sought to be recovered by the Trustee under Section 547 of the Bankruptcy Code. On the other hand, a showing by the Defendants of fraud by the Debtor in relation to the subject transaction would have no effect on and would not impair the authority of the Trustee to recover the precious metals under the Trustee's Section 547 avoidance powers by virtue of the fact that the Trustee exercises these avoidance powers, together with others, for the benefit of the general creditor body and without imputation of knowledge as to any alleged acts of fraud committed by the Debtor. Section 544 of the Bankruptcy Code has as its primary objective the Trustee's assertion of rights in and to property rights of the Debtor on behalf of innocent general unsecured creditors, notwithstanding that those rights may be asserted against yet another creditor damaged by the asserted fraud or misrepresentation of the Debtor; in effect, the Trustee secures rights and interests of the Debtor for the benefit of the many to the detriment, perhaps, of the few. In this case, the Trustee rightfully seeks to secure for the vast number of creditors who received nothing from this Debtor the precious metals other creditors were able to obtain from the Debtor and which precious metals enabled these limited number of creditors to obtain more than their brethren creditors were able to receive; i.e., the very objective of the Trustee's authority

granted him under Section 547 of the Bankruptcy Code.

■ In sum, the Trustee's hypothetical lien creditor status granted him under Section 544(a) of the Bankruptcy Code remains and should remain unaffected by any alleged fraudulent activities of the Debtor; a fortiori, the Trustee's authority under Section 547 of the Bankruptcy Code to assert his hypothetical lien creditor status as against these Defendants with respect to the subject precious metals should likewise remain unimpaired by the Debtor's alleged fraudulent activities.

Next, the Defendants strain the interpretation of Section 546(e) of the Code in an attempt to bring the within transaction within the purview of said Section for the purpose of limiting the Trustee's avoiding powers under Section 547 of the Code. 11 U.S.C. 546(e) provides as follows:

> Notwithstanding Section 544, 545, 547, 548(a)(2), and 548(b) of this Title, the Trustee may not avoid a transfer that is a margin payment, as defined in Section 741(5) or 761(15) of this Title, or settlement payment as defined in Section 741(8) of this Title made by or to a commodity broker, forward contract merchant, stock broker, financial institution or securities clearing agency, that is made before the commencement of the case, except under Section 548(a)(1) of this Title.

11 U.S.C. Section 741(5) defines a margin payment as follows:

> 'Margin payment' means payment or deposit of cash, a security or other property, that is commonly known to the securities trade as original margin, initial margin, maintenance margin, or variation margin, or as a mark-to-market payment or that secures an obligation of a participant in a securities clearing agency;

11 U.S.C. Section 761(15) defines margin payment, set forth below, as same relates to a commodity broker liquidation;

> 'Margin payment' means payment or deposit of cash, a security, or other property, that is commonly known to the commodities trade as original margin, initial margin, maintenance margin, or variation margin, including mark-to-market payments, settlement payments, variation payments, daily settlement payments and final settlement payments made as adjustments to settlement prices.

Lastly, 11 U.S.C. Section 741(8) defines a settlement payment as same relates to a stockbroker liquidation:

> 'Settlement payment' means a preliminary settlement, a partial settlement payment, an interim settlement a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade.

In order for any of the foregoing definitions to be applicable to the instant case, the Debtor must be classified as either a stockbroker or a commodities broker as defined under applicable statutes. The following definitions are significantly instructive:

> 15 USC Section 78(c)(94): The term 'broker' means any person engaged in the business of effecting transactions and securities for the account of others, but does not include a bank.

> 11 USC Section 101(5): 'Commodity broker' means futures commission merchant, foreign futures commission merchant, clearing organization, leverage transaction merchant or commodity options dealer, as defined in Section 761 of this Title with respect to which there is a customer, as defined in Section 761(9) of this Title.

> 11 USC Section 761(9)(E): 'Customer' means—if the Debtor is a commodity options dealer—

> > (i) entity for or with whom the Debtor deals and that holds a claim on account of a commodity contract made, received, acquired or held by or through the Debtor in the ordinary course of the Debtor's business as a commodity options dealer from or for the commodity options account of such entity; or
> > (ii) entity that holds a claim against the Debtor arising out of—

(I) the making of, liquidation of, exercise of, or a change in value of, a commodity contract of a kind specified in clause (i) of this subparagraph, or

(II) a deposit or payment of cash, a security or other property with the Debtor for the purpose of making, exercising, or margining such a commodity contract.

(See also 15 U.S.C. Section 78c(a)(23)(A) and (B) for definition of "clearing agency".)

■ The foregoing definitions make it unequivocably clear that the Defendants considered the Debtor to be a precious metals dealer and not a broker or commodities clearing house dealing in investment securities or commodity contracts. Even in the instance where a transaction does, in fact, involve the sale of a commodities future, such commodities futures or accounts have been held not to be securities within the contemplation of the securities laws. *Walsh v. International Precious Metals Corporation*, 510 F.Supp. 867 (USDC, Utah, 1981). Accordingly, Defendants' characterization of their transaction with the Debtor as one involving a security and, thus, is within the purview of Section 546(e) of the Bankruptcy Code clearly is not in concert with, and does not alter, the fact of the sale and purchase transaction entered into between these Defendants and the Debtor. The Defendants desired to purchase precious metals from the Debtor and paid the requisite purchase price; the Debtor, for its part, contracted to sell to Defendants the instant precious metals and did, albeit belatedly, deliver said precious metals to Defendants. Neither the Debtor nor the Defendants contemplated or sought the sale of a commodities or investment contract but, rather, contemplated and effected on November 1, 1982 a sale and purchase agreement for precious metals. On this basis, the provisions of Section 546(e) of the Bankruptcy Code are wholly inapplicable to the case at Bar.

■ In addressing of the Defendants' remaining affirmative defense, the Defendants assert that the Trustee should be equitably estopped from asserting an avoidable preferential transfer by virtue of certain alleged representations and fraud committed by the Debtor as to these Defendants. The Defendants ignores the fact, as has been previously argued, that the Trustee is empowered under Section 547 of the Bankruptcy Code to avoid preferential transfers by virtue of the Trustee's "strong arm" powers conferred upon the Trustee under Section 544(a) of the Bankruptcy Code. Section 544(a), as previously discussed, confers upon the Trustee a hypothetical lien creditor status with respect to the precious metals premising the instant action, without the imputation of knowledge to the Trustee of the Debtor's alleged fraud or misrepresentations. Moreover, from both a conceptual and factual standpoint, it is the Trustee and not the Debtor who is seeking the return of the subject precious metals from these Defendants. Although Bankruptcy Courts do have the authority to take equitable steps not specifically authorized by the bankruptcy laws under 11 U.S.C. Section 105(a) of the Bankruptcy Code, Section 105(a) does not give bankruptcy courts authority to contravene specific provisions of the Bankruptcy Code. *In re Pirsig Farms, Inc.*, 46 B.R. 237 (USDC Mn.1985). Defendants' reliance upon Section 105(a) of the Bankruptcy Code for the purpose of seeking to equitably estop the Trustee from asserting the within action is, therefore, an impermissible request that this Court take superior cognizance of the general provisions of Section 105(a) over the specific provisions of both Sections 547 and 544 of the Bankruptcy Code. Equitable estoppel is simply not available in this case as a bar or restraint on the Trustee's 547 avoidance powers.

Lastly, the Court concludes that the value of the subject precious metals on the day they were received by the Defendants was $4,671.06.

In summary, the Court finds that the Trustee is entitled to judgment against the Defendants for the return of the aforedescribed precious metals or, in the alternative, in the event the Defendants fail to return same within ten (10) days from the

date of the Court's Final Judgment rendered herein, the Trustee shall be entitled to a Final Judgment for the value of said precious metals.