745 P.2d 966

**PRAIRIE STATE BANK, an Illinois banking corporation, Defendant Cross-Claimant Appellant,**

v.

**INTERNAL REVENUE SERVICE OF the TREASURY DEPARTMENT, United States of America, Defendant Cross-Defendant Appellee.**

**No. 1 CA–CIV 8818.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 20, 1987.

Review Denied Dec. 1, 1987.

Shimmel, Hill, Bishop & Gruender, P.C. by Richard B. Kelly, Charles E. Maxwell, Phoenix, for defendant cross-claimant appellant.

United States Dept. of Justice by Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup, William S. Estabrook, Barbara I. Hodges, Washington, D.C., and Paul R. Corradini, Asst. U.S. Atty., Phoenix, for defendant cross-defendant appellee.

CORCORAN, Judge.

Secured party Prairie State Bank (the Bank) appeals from summary judgment awarding the Internal Revenue Service (IRS) certain insurance proceeds owed the debtor by Farmers Insurance Company of Arizona (Farmers) as a result of the theft of the collateral from the debtor's residence in Arizona. We must determine whether under A.R.S. §§ 47–1101, *et seq.*, Arizona's version of the Uniform Commercial Code (UCC),[1] a perfected security interest in goods removed to Arizona from the state of original perfection prevails "against a subsequent judgment lien arising out of an unsecured obligation" within 26 U.S.C. § 6323(h)(1) such that it retains its original priority over a federal tax lien assessed against the debtor, where the security interest was not reperfected within four months after the collateral arrived in Arizona. This question has not previously been answered in Arizona. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

---

1. Arizona substantially adopted the 1972 revised version of the UCC in Laws 1975, ch. 65, by amending and deleting portions of an earlier version of the UCC adopted by Arizona in Laws 1967, ch. 3, and enacting additional sections that appeared for the first time in the 1972 UCC. In order to conform to the UCC numbering system, Arizona renumbered its version of the UCC in Laws 1984, ch. 77. For the sake of clarity and uniformity we will refer to the applicable sections of the Arizona UCC according to their designation and numbering in the current version of the UCC: A.R.S. § 47–9103(A)(4)(a); UCC § 9–103(1)(d)(i).

The pertinent facts are undisputed. On or about April 13, 1981 Prairie State Bank of Illinois lent $20,000 to Jack Renslow and his wife. As collateral for the loan the Renslows gave the Bank a security interest in 12 firearms. The Bank perfected its security interest on April 13, 1981 by filing a financing statement in Illinois and taking possession of the firearms. In November 1981 the Renslows moved from Illinois to Phoenix, Arizona. The Bank retained possession of the firearms.

On June 22, 1982 the IRS recorded a notice of federal tax lien against the Renslows. On or about August 10, 1982, the Bank shipped 11 of the 12 firearms to the Renslows in Arizona. Later, on October 22, 1982, the IRS recorded an additional notice of federal tax lien. In September 1982 the firearms were stolen from the Renslows' residence. The Bank did not file a UCC financing statement in Arizona, and the record contains no evidence that it repossessed the firearms or possessed the insurance proceeds relating to them after it shipped them to Arizona.[1A] At the time of the theft, Farmers insured the contents of the Renslows' residence against theft. Farmers ultimately agreed to settle the Renslows' loss claim for $14,699.15. In January and February 1983 the IRS served notice of levy on Farmers as to all property and property rights of the Renslows in a total sum exceeding $100,000, including interest and statutory penalties on the amounts previously assessed.

Farmers thereafter brought the instant interpleader action against the Renslows, the Bank and the IRS. Farmers was discharged from all liability upon depositing the disputed insurance proceeds in court. The Bank crossclaimed against the IRS, and the IRS and the Bank filed cross motions for summary judgment. After argument, the trial court ruled:

> In view of UCC § 9–103(1), and the fact that the Bank has taken no action to reperfect its security interest in Arizona, and the fact that that security interest has now lapsed, the United States' Motion for Summary Judgment is granted and the Bank's Cross Motion for Summary Judgment is denied.

The trial court entered formal judgment in accordance with its ruling on December 2, 1985.

The United States is granted a lien for unpaid federal taxes on all property owned and subsequently acquired by the

---

**1A.** In its motion for reconsideration of this opinion, one of the Bank's claims is that this court "wrongfully conclude[d] that 'the record contains no evidence that [the Bank] possessed the insurance proceeds relating to [the firearms] after it shipped them to Arizona.'" Contrary to the Bank's assertion, the record contains no such evidence. Despite numerous opportunities to place the Bank's alleged possession of the proceeds into evidence—in its answer, in its motion for summary judgment or in its response to the IRS' motion for summary judgment—the Bank did not allege such possession until it filed a motion for reconsideration of the summary judgment in favor of the IRS in the trial court. The Bank did not allege that newly discovered evidence existed; it simply made a bald, unsupported assertion in its memorandum that it "had possession of the insurance proceeds until this action was commenced," and stated that it "has not vocalized this *irrelevant* fact" before judgment was entered. (Emphasis added.)

Generally, the "facts" which the trial court will consider as "admissible in evidence" in ruling on a motion for summary judgment are those which are set forth in an affidavit or a deposition; an unsworn and unproven assertion in a memorandum is not such a fact. Rule 56(e), Arizona Rules of Civil Procedure. If the Bank's assertion is true, it could have easily presented the trial court with "facts as would be admissible in evidence" to demonstrate the point. The party asserting a fact has the burden to establish the fact. *Yeazell v. Copins,* 98 Ariz. 109, 402 P.2d 541 (1965). Due to the Bank's failure to present any facts to prove this allegation, and its concession that the possession of the insurance proceeds is an "irrelevant fact," we do not address whether a fact may be presented for the first time in a motion for reconsideration of a summary judgment directed to a trial court. The Bank simply failed to prove that its assertion is a fact.

In addition, the Bank fails to give any supporting citation to the record below. It merely cites us to its trial court memorandum in support of its motion for reconsideration and to the briefs it filed in this court, which also lack citations to the record which would prove this fact. Therefore, we will not further consider this assertion. Rule 13(a)(4), Arizona Rules of Civil Appellate Procedure; *Arizona Laborers v. Hatco, Inc.,* 142 Ariz. 364, 370, 690 P.2d 83, 89 (App.1984).

taxpayer by 26 U.S.C. § 6321. The question of whether a federal tax lien has priority over a competing lien on a taxpayer's property is one of federal law. *United States v. Equitable Life Assur. Soc'y,* 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966); *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). 26 U.S.C. § 6323 provides in part as follows:

(a) **Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors.** The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

. . . .

(h) **Definitions.** For purposes of this section and section 6324—

(1) *Security interest.*—The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, *at such time,* the property is in existence and *the interest has become protected under local law against a subsequent judgment lien* arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

(Emphasis added). Thus, 26 U.S.C. § 6323 makes the question of whether a competing lien has priority over a federal tax lien depend on the resolution of the state law question of whether at the relevant time the competing lien would take priority over a "subsequent judgment lien arising out of an unsecured obligation...." A.R.S. § 47–9301 provides in part:

C. A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy or the like....

D. A person who becomes a lien creditor while a security interest is perfected takes subject to the security interest only to the extent that it secures advances made before he becomes a lien creditor....

A person who holds a "judgment lien arising out of an unsecured obligation ..." within 26 U.S.C. § 6323 is a "lien creditor" as defined by A.R.S. § 47–9301(C).

■ In order to be a holder of a security interest, a party's interest must be a "security interest" within the meaning of § 6323(h)(1) of the Internal Revenue Code of 1954 (26 U.S.C.). That section provides that a security interest exists only if "at such time," it "has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation." A security interest is so protected when the holder has taken all of the steps necessary to "perfect" its security interest under state law—in this case, the Arizona version of the UCC. Coogan, *The Effect of the Federal Tax Lien Act of 1966 Upon Security Interests Created Under The Uniform Commercial Code,* 81 Harv.L. Rev. 1369, 1382 (1968). The Treasury Regulations provide that this security interest must be in existence for the purpose of determining priorities *"at the time as of which its priority against a tax lien is determined."* (Emphasis added). 26 C.F. R. § 301.6323(h)–1(a)(i). Accordingly, a secured party who fails to take the steps necessary under local law to continue the perfection of its security interest, will lose the priority granted by federal law. *General Elec. Credit Corp. v. Isaacs,* 90 Wash. 2d 234, 240, 581 P.2d 1032, 1035 (1978).

In the instant case the Bank's security interest in the firearms was perfected in Illinois by the filing of a financing statement on April 13, 1981. Under Ill.Rev.Stat. ch. 26, § 9–403(2) (1978), Illinois' version of UCC § 9–403(2), a filed financing statement is effective for 5 years after the date of filing. The removal of the firearms from Illinois to Arizona, however, brought into play A.R.S. § 47–9103, which provides:

**Perfection of security interests in multiple state transactions**

**A. Documents, instruments and ordinary goods:**

. . . .

4. When collateral is brought into and kept in this state while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by article 3 of this chapter to perfect the security interest:[2]

(a) *If the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four months after the collateral is brought into this state, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal;*

(b) If the action is taken before the expiration of the period specified in subdivision (a), the security interest continues perfected thereafter.

The dispositive question in this case is whether the Bank's failure to file an appropriate financing statement in Arizona within four months of the firearms' removal to Arizona rendered its lien unperfected under Arizona law "against a subsequent judgment lien arising out of an unsecured obligation," thus forfeiting the lien's status as a "security interest" under 26 U.S.C. § 6323 with priority over any federal tax lien for which notice was filed after its initial perfection. The Bank argues that its lien would remain perfected for at least 5 years after it filed its Illinois financing statement, and that its failure to reperfect its lien within 4 months after the firearms were removed to Arizona did not cause the lien to become unperfected as against the IRS' competing tax liens.

The Bank notes that A.R.S. § 47–1201(33) defines "purchaser" as a person who takes by purchase, and A.R.S. § 47–1201(32) defines "purchase" as follows:

> "Purchase" includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift or any other voluntary transaction creating an interest in property.

The Bank argues that because the IRS did not acquire its tax liens through any voluntary transaction with the Renslows, it does not qualify as a "purchaser." The Bank argues that A.R.S. § 47–9103(A)(4)(a) expressly provides that a security interest in removed collateral that is not reperfected in the state to which it has been removed within 4 months is "thereafter deemed to have been unperfected as against a person who became a *purchaser* after removal," and that, therefore, by negative implication such a security interest retains its priority over post-removal liens obtained other than by purchase, into which category the IRS' tax liens fall by virtue of 26 U.S.C. § 6323(h)(1).

The Bank's interpretation of A.R.S. § 47–9103(A)(4)(a) is consistent with that advocated by several commentators on the 1972 revised version of the UCC. The Article 9 Review Committee of the Permanent Editorial Board for the Uniform Commercial Code noted in its Final Report of April 25, 1971:

> The Committee proposes in … 9–103(1)(d)(i) … to make clear that after the lapse purchasers—i.e., buyers and secured parties—have priority over the lapsed security interest. The negative inference is that judgment lienors remain subordinate.

*Id.* at 245, 581 P.2d 1032, quoted in Coogan, *The New UCC Article 9*, 86 Harv.L.Rev. 477, 536 (1973). Other commentators have offered similar analyses. Headrick, *The New Article Nine of the Uniform Commercial Code: An Introduction and Critique*, 34 Mont.L.Rev. 218, 240–41 (1973); Adams, *The 1972 Official Text of the Uniform Commercial Code: Analysis of Conflict of Laws Provisions*, 45 Miss.L.J. 281, 327–28 (1974); Pearson, *Absolute v. Conditional Protection for Secured Parties: Problems of Lapsed Perfection Under Article 9 of the Uniform Commercial Code*, 17 Hous.L.Rev. 1, 43–44 (1979); J. White &

---

**2.** Article 3 comprises A.R.S. §§ 47–9301 through 47–9318. Section 47–9302 requires the filing of a financing statement to perfect a security interest in goods such as the firearms in the instant case, subject to enumerated exceptions not here applicable.

R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 23–18 at 976 (2d ed. 1980).

■ Statutes will be interpreted whenever possible so that no clause, sentence or word is rendered superfluous, void, contradictory or insignificant. *State v. Superior Court*, 113 Ariz. 248, 550 P.2d 626 (1976); *State v. Deddens*, 112 Ariz. 425, 542 P.2d 1124 (1975); *State Bd. of Tech. Regis. v. McDaniel*, 84 Ariz. 223, 326 P.2d 348 (1958); *Union Rock & Materials Corp. v. Scottsdale Conf. Center*, 139 Ariz. 268, 678 P.2d 453 (App.1983). The commentators' discussions appear to rely primarily on the "negative inference" reasoning first advanced by the Article 9 Review Committee of the UCC Permanent Editorial Board in 1971. This reasoning is based exclusively on that portion of UCC § 9–103(1)(d)(i) which states: "the security interest ... is thereafter deemed [after expiration of the 4–month period] to have been unperfected as against a person who became a purchaser after removal," and entirely overlooks the distinct language of that section which provides unequivocally that the security interest "becomes unperfected at the end of that [4–month] period...." Indeed, the Bank's and the commentators' view would render that language superfluous, because if A.R.S. § 47–9103(A)(4)(a) is interpreted to protect only purchasers of the collateral, then the clause "the security interest becomes unperfected at the end of that [4–month] period ..." adds no additional meaning to that conveyed by the clause "the security interest ... is thereafter deemed [after expiration of the 4–month period] to have been unperfected as against a person who became a purchaser after removal...."

We find the court's general approach in *Rockwell Int'l Credit Corp. v. Valley Bank*, 109 Idaho 406, 707 P.2d 517 (App. 1985), more comprehensive and persuasive than the commentators' and Bank's position. In analyzing the meaning of the Idaho UCC § 9–103 in the context of a priority contest between two security interests in equipment *moved from Idaho to Wyoming*, the court stated:

As we read section 9–103(1)(d), failure to reperfect within four months carries two distinct consequences. First, the security interest "becomes unperfected" at the end of the four-month period. Second, it is "deemed to have been unperfected" during the same period as against any person who became a "purchaser" after the collateral was moved. These consequences are textually joined by the conjunctive term "and". The first consequence is prospective; the second is retroactive. If a security interest is not reperfected within four months, the first consequence is that it becomes unperfected in the future as against the claims of all other secured creditors, regardless of whether they are "purchasers." It remains unperfected until reperfection occurs. The second consequence is that the security interest also is deemed to have been unperfected as against the claims of "purchasers" during the elapsed four-month period. The second consequence cannot be obviated by tardy reperfection.

109 Idaho at 408, 707 P.2d at 519. The *Rockwell* court went on to resolve the priority contest before it as follows:

The first consequence governs this case. When Rockwell failed to reperfect within four months, its security interest became unperfected not merely as to "purchasers" but as to any holder of a competing security interest. Valley Bank held such an interest. Of course, its interest, like Rockwell's had become unperfected by operation of section 9–103(1)(d). But Valley Bank thereafter was the first to reperfect its interest, doing so by taking possession of the collateral before Rockwell filed with the Secretary of State.... Valley Bank, in essence, won the reperfection race and in so doing, it elevated its security interest from a subordinate position to a superior one.

109 Idaho at 408–09, 707 P.2d at 519–20. The analysis in *Rockwell* diverges from the commentators' in focusing on the two separate operative clauses in UCC § 9–103(1)(d)(i) and in harmoniously interpreting both.

■ We conclude that the same approach must be followed in this case. When the Bank failed to reperfect its security interest within 4 months after the Renslows received the 11 firearms in Arizona, that security interest became "unperfected at the end of that period...." A.R.S. § 47–9103(A)(4)(a). Under 26 U.S.C. § 6323(h)(1) the IRS' tax liens against the Renslows occupied, with respect to the Bank's now unperfected security interest, the position of a hypothetical creditor with "a subsequent judgment lien arising out of an unsecured obligation...." The priority contest was accordingly governed by A.R.S. § 47–9301, which provides in part:

A. Except as otherwise provided in subsection B [dealing with a "purchase money security interest"] of this section, an unperfected security interest is subordinate to the rights of:

. . . .

2. A person who becomes a lien creditor before the security interest is perfected.

The Bank's unperfected security interest thus became subordinate to the IRS' tax liens.[3] This result comports with the language of A.R.S. § 47–9103 and recognizes the practical reality that a 4–month grace period offers secured creditors ample time to refile a financing statement.

The Bank appears to cite *In re Int'l Gold Bullion Exch., Inc.*, 53 B.R. 660 (Bkrtcy.S.D.Fla.1985), and *In re Hecht*, 51 B.R. 72 (Bkrtcy.D.Vt.1985), for the proposition that the position of a trustee in bankruptcy is inferior to an out-of-state security interest under UCC § 9–103(1)(d)(i). Neither of those cases concerns an issue under UCC § 9–103; both support only the uncontroversial proposition that a trustee in bankruptcy has the rights of a hypothetical lien creditor as of the filing of the bankruptcy petition.

The trial court correctly held that the IRS' tax liens had priority over the Bank's security interest under the undisputed facts of this case. The judgment is affirmed.

GREER, J., concurs.

KLEINSCHMIDT, Judge, dissenting:

I respectfully dissent. As the majority observes, the commentators who have considered this problem, including the Permanent Editorial Board for the Uniform Commercial Code, have all reached the conclusion that a creditor in the position of the IRS is not a "purchaser" within the meaning of A.R.S. § 47–9103(A)(4)(a). As these commentators understand the law, the IRS could not prevail over the Bank under the facts of this case. The Court of Appeals of Idaho, in *Rockwell International Credit Corp. v. Valley Bank*, 109 Idaho 406, 707 P.2d 517 (1985), arrived at a different conclusion by a close analysis of the language of a statute that can be read several ways. I see no reason to believe that when our legislature adopted the Uniform Commercial Code it preferred the construction so lately adopted by the Idaho court.

---

**3.** The Bank's security interest also necessarily remained subordinate to the IRS' tax liens thereafter. Even if the Bank had reperfected its security interest at some point after the expiration of the 4–month period, such reperfection would not relate back to the date of original perfection in Illinois, and the IRS' tax liens would prevail as the first to have been filed. *See* 26 C.F.R. § 301.6323(h)–1(a)(i).