795 P.2d 827

**GM DEVELOPMENT CORPORATION,
an Arizona corporation,
Plaintiff–Appellee,**

v.

**COMMUNITY AMERICAN MORTGAGE
CORPORATION, a Wisconsin corpora-
tion; Community Shares, Ltd., a Wis-
consin corporation, Defendants–Appel-
lants.**

No. 1 CA–CV 89–100.

Court of Appeals of Arizona,
Division 1, Department C.

July 26, 1990.

Murphy & Posner by Jean Gray Platt, Terry L. Rakow, Phoenix, for plaintiff-appellee.

Brown & Bain, P.A. by Janie A. Simms, Eddward P. Ballinger, Jr., Douglas Gerlach, Lynn F. Chandler, Phoenix, for defendants-appellants.

## OPINION

CONTRERAS, Presiding Judge.

This is an appeal of the trial court's entry of partial summary judgment in favor of appellee GM Development Corporation (hereinafter "GM") on a breach of contract claim. The trial court determined that appellant Community American Mortgage Corporation (hereinafter "CAMCO") was liable for accrued rent as the lessee of the premises, and appellant Community Shares, Ltd. (hereinafter "Shares") was liable as guarantor on the lease. On appeal, we consider three issues:

1. Whether deposition transcripts referred to in the pleadings on the motion for partial summary judgment but not filed with the court until after entry of formal judgment can be considered by this court as part of the record on appeal.

2. Whether there were genuine issues of material fact in the record before the trial court which render entry of partial summary judgment improper.

3. Whether the trial court abused its discretion by including Rule 54(b) lan-

guage in the formal judgment on the breach of contract claim.

In response to the foregoing issues, we conclude that the deposition transcripts cannot be considered by this court as part of the record on appeal. In addition, we conclude that appellants failed to establish any genuine issues of material fact in the record that would preclude entry of partial summary judgment. We further conclude that the inclusion of Rule 54(b) language in the formal judgment was not an abuse of the trial court's discretion. Accordingly, we affirm the trial court's entry of partial summary judgment on the breach of contract claim.

### FACTS

In September, 1986, CAMCO entered into a ten-year written lease agreement with GM. The contract involved the lease of commercial property owned by GM and located in Scottsdale, Arizona. At some point thereafter, Shares executed a written guaranty of the lease, guaranteeing performance of the terms of the lease including payment of rent. CAMCO failed to pay rent beginning in November, 1987. In January, 1988, GM filed a complaint naming CAMCO and Shares as defendants.[1] Although the complaint has a number of counts, our analysis focuses on Count II which alleges that CAMCO breached its lease agreement and Shares breached its guaranty of the lease by failing to make rental payments that were due and owing.

In May, 1988, GM filed a motion for partial summary judgment against CAMCO and Shares on Count II. Following the submission of response and reply memoranda and oral argument on the matter, the trial court granted partial summary judgment in favor of GM by minute entry dated October 12, 1988. Final judgment was entered on December 7, 1988. Appellants subsequently filed a motion for reconsideration and objections to the form of judgment. Although the order denying the motion for reconsideration and overruling objections to the form of judgment was signed by the trial judge on December 21, 1988, it was not file-stamped until December 23, 1988. On December 22, 1988, the trial court entered an order allowing the filing of specified deposition transcripts "for use in the appeal of this matter." This appeal followed.

### DEPOSITION TESTIMONY

■■■ As a threshold issue, we must first determine what consideration, if any, is to be given by this court to the deposition transcripts filed by appellants pursuant to the trial court's order of December 22, 1988. An appellate court's review is limited to the record before the trial court. *Schaefer v. Murphey,* 131 Ariz. 295, 299, 640 P.2d 857, 861 (1982); *West v. Baker,* 109 Ariz. 415, 418–19, 510 P.2d 731, 734–35 (1973). Consequently, unless the deposition transcripts were part of the record before the trial court at the time it considered the motion for partial summary judgment, we cannot consider them on appeal. *See Payne v. M. Greenberg Construction,* 130 Ariz. 338, 343, 636 P.2d 116, 121 (App.1981); *Cimino v. Alway,* 18 Ariz. App. 271, 272, 501 P.2d 447, 448 (1972).

It is clear from the record that the transcripts were not part of the record before the trial court during its deliberations on the motion for partial summary judgment or at any time prior to the trial court's order granting partial summary judgment. Appellants' response to GM's motion for partial summary judgment and GM's reply to appellants' response repeatedly refer to deposition testimony in support of their factual contentions. However, we note that neither the appellants nor GM quoted directly from the depositions. We further note that neither party attached copies of the portions to which reference was made nor were the depositions presented to or filed with the trial court. The parties in their written memoranda merely indicated the pages and lines where particular deposition testimony could be found in the tran-

---

1. GM's complaint also alleged that Community Savings and Loan Association ("Savings") was responsible for the rent pursuant to an alter ego theory of liability. Since Savings is not a party to this appeal, its potential liability is not addressed in this opinion.

scripts. From the foregoing undisputed scenario, it is clear that the transcripts could not have been considered by the trial court before partial summary judgment was granted. They cannot now be considered by this court on appeal.

Notwithstanding the clearly established fact that the trial court did not consider the depositions prior to granting partial summary judgment, appellants argue that the trial court's consideration of the deposition testimony is evidenced by its order to file the depositions "for use in the appeal of this matter." This argument is unpersuasive. The trial court's order merely allowed the depositions to be placed in the file pursuant to Rule 2.14 of the Maricopa County Superior Court Local Rules. The order does not constitute a ruling on the scope of the record on appeal.

█ It is true, as appellants assert, that Rule 2.14, Maricopa County Superior Court Local Rules, precludes counsel from filing discovery papers with the court absent a court order. However, the rule does not prohibit their use in connection with motions and other proceedings. The rule does not allow the party opposing summary judgment to rely solely on unsworn assertions of fact to controvert a motion which is supported by sworn facts. *See Northern Contracting Company v. Allis–Chalmers Corporation*, 117 Ariz. 374, 377, 573 P.2d 65, 68 (1977); *Prairie State Bank v. Internal Revenue Service*, 155 Ariz. 219, 221 n. 1A, 745 P.2d 966, 968 n. 1A (App. 1987). If the opposing party fails to present, either by affidavit or other competent evidence, facts which controvert the moving party's affidavits, the facts alleged by the moving party may be considered as true. *Portonova v. Wilkinson*, 128 Ariz. 501, 502, 627 P.2d 232, 233 (1981); *Sato v. Van Denburgh*, 123 Ariz. 225, 228, 599 P.2d 181, 184 (1979); *Northern Contracting Company*, 117 Ariz. at 377, 573 P.2d at 68; *Molever v. Roush*, 152 Ariz. 367, 370, 732 P.2d 1105, 1108 (App.1986).

In addition, Local Rule 2.14 must be interpreted in conjunction with Rule IV(f), Uniform Rules of Practice of the Superior Court of Arizona, and Rule 56(e), Arizona Rules of Civil Procedure, which set forth with more particularity the form of pleadings required in summary judgment proceedings. Rule 56(e), Arizona Rules of Civil Procedure, provides as follows:

... When a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading*, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. [emphasis added]

Rule IV(f), Uniform Rules of Practice of the Superior Court, requires that statements of facts "shall refer to the specific portion *of the record* where the fact may be found" (emphasis added).

█ A related but different question is whether the factual contentions made by the parties in their pleadings can be considered evidence that was before the trial court. As a general rule, an unsworn and unproven assertion is not a fact that a trial court can consider in ruling on a motion for summary judgment. *See Northern Contracting Company*, 117 Ariz. at 377, 573 P.2d at 68; *Prairie State Bank*, 155 Ariz. at 221 n. 1A, 745 P.2d at 968 n. 1A. A party asserting a fact has the burden of proving that fact. *Yeazell v. Copins*, 98 Ariz. 109, 116, 402 P.2d 541, 546 (1965); *Prairie State Bank*, 155 Ariz. at 221 n. 1A, 745 P.2d at 968 n. 1A.

█ Where the party moving for summary judgment makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the opposing party to produce sufficient competent evidence to show that there is an issue. *E.g., Echols v. Beauty Built Homes*, 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982); *National Housing Industries, Inc. v. E.L. Jones Development Company*, 118 Ariz. 374, 377, 576 P.2d 1374, 1377 (App.1978). GM's motion for partial summary judgment was supported by pleadings previously filed

with the court, copies of the lease agreement and the guaranty, and three affidavits. One affidavit verified the factual circumstances surrounding the execution of the lease agreement and the guaranty, along with a verification of the amount of rent owed by appellants. A second affidavit verified attempts on behalf of GM to sell or lease the property after appellants stopped paying rent. A third affidavit verified that GM had been assigned the right to collect the sums due under the CAMCO lease by the permanent lender on the subject real property. Our review of the record which was before the trial court clearly indicates that GM made a prima facie showing that no genuine issue of material fact existed regarding GM's claim that CAMCO breached the lease agreement and Shares breached its guaranty. As a result, the burden shifted to appellants to produce controverting evidence sufficient to show there was a triable issue of material fact.

■ In the present case, the only competent material submitted with appellants' response to the motion for partial summary judgment was an affidavit which verified that the attached copies of Shares' by-laws and articles of incorporation were true and accurate.[2] Appellants' affidavit does not controvert the prima facie showing established in the affidavits supporting GM's motion. We note that appellants' written response to GM's motion for partial summary judgment contains unsworn, unproven and somewhat argumentative statements of fact. We further note that appellants did not quote from the depositions, attach copies of the portions referred to, or present or file the deposition transcripts with the court so that they would become part of the record to be considered by the trial court in its deliberations on the motion. We conclude that appellants failed to present competent material controverting GM's properly supported motion for partial summary judgment.[3]

■ Because we have concluded that the deposition testimony was not before the trial court and thus cannot be considered by this court and the only controverting material presented was unsworn assertions of facts, our review of the partial summary judgment is limited. We review the issues of whether James Beck had authority to bind appellant Shares by executing the guaranty and whether there is any genuine issue of fact with respect to damages.[4]

## AGENCY AUTHORITY

■ Appellant Shares contends that the guaranty is void and unenforceable because the individual who executed the guaranty, James C. Beck, had no authority to bind Shares.[5] Shares further asserts

2. The affidavit also verified that Community Savings and Loan, a co-defendant at the trial level, was insured by the FSLIC.

3. The situation in the present case differs from that presented in *Gordinier v. Aetna Casualty & Surety Company*, 154 Ariz. 266, 742 P.2d 277 (1987). As pointed out in footnote 2 of *Gordinier*, the Supreme Court could not tell from the record whether the trial judge had a copy of appellant's deposition when he considered the motion for summary judgment. Here, the record clearly shows the trial judge did not have copies of depositions at the time summary judgment was considered. Although the Supreme Court considered appellant's statements of the contents of her deposition, it did so since appellees did not dispute the accuracy of the statements of the contents of appellant's deposition. Such is not the case presented here. The Supreme Court in *Gordinier* pointed out that "... diligent counsel seeking summary judgment will attach to the motion any supporting documentation that has not already been filed with the

court." 154 Ariz. at 268, 742 P.2d at 279. The same may be said for counsel opposing a motion for summary judgment.

4. In its responsive memoranda filed with the trial court, appellant Shares argued that GM violated the Bank Bribery Act, 18 U.S.C. § 215, thus giving rise to particular defenses which precluded entry of summary judgment against it. At oral argument, counsel for Shares stated that since the Act had been asserted in the appellate briefs, she could not now abandon it. She did, however, concede that she would not pursue it in oral argument. We concur with the finding of the trial court that the Act is not applicable to obligations arising from a lease agreement. We note that appellants' present counsel replaced former counsel after the appellate briefs were filed.

5. CAMCO does not contend that Beck lacked authority to bind it on the lease agreement. At the time Beck executed the lease agreement and

that execution of a lease guaranty is not an activity conducted in the normal course of its business.

■■■ Shares is a Wisconsin corporation doing business in Arizona. According to article III of its articles of incorporation, its purpose is "to engage in any lawful act or activity for which corporations may be organized under the Wisconsin Business Corporation Law, Chapter 180 of the Wisconsin Statutes, and acts amendatory thereof and supplemental thereto."

■■■ One of the general powers allocated to Wisconsin corporations under the Wisconsin Business Corporation Law is that "[e]ach corporation, when no inconsistent provision is made by law or by its articles of incorporation, shall have power ... [t]o make contracts, including guarantees, and incur liabilities. . . ." Wis.Stat. Ann. § 180.04 (West 1957) (amended 1965). Shares' articles of incorporation do not contain any provision precluding the corporation from entering into contracts, including guarantees. Consequently, Shares is estopped from arguing any lack of authority to bind Shares because executing a guaranty was not in Shares' normal course of business. Wisconsin corporations have such authority by statute, absent a provision in their articles of incorporation to the contrary.

■■■ The question of whether such authority to bind the corporation had been delegated to Beck is a separate issue. As Shares points out, a corporation is not bound by a contract entered in its behalf unless the individual executing the contract had the authority to bind the corporation. *See Cameron v. Lanier*, 56 Ariz. 400, 402, 108 P.2d 579, 580 (1940). Although the burden of proving the existence of such authority is on the party claiming under the contract, an express contract between the principal and agent is not required to establish the existence of an agency relationship. *Cote v. A.J. Bayless Markets, Inc.*, 128 Ariz. 438, 444, 626 P.2d 602, 608

(App.1981). Whether an agency relationship exists is a question of the principal's intent. *Salt River Valley Water Users' Association v. Giglio*, 113 Ariz. 190, 195, 549 P.2d 162, 167 (1976); *Cote*, 128 Ariz. at 444, 626 P.2d at 608.

To determine the intent of the principal, we first examine Shares' by-laws. Article III, section 4, states that it is the board of directors which has the power to manage the corporation and do such things "as are not contrary to law, the Articles of Incorporation or these By–Laws." However, the by-laws further provide, in article V, section 5, that "[i]n the absence of action by the Board of Directors, the officers [of the corporation] shall have such powers and duties as generally pertain to their respective offices." These provisions impliedly delegate to Beck, as the president and chief executive officer of Shares, the authority to act on behalf of Shares when the board of directors has failed to act on a matter. The undisputed facts are that Beck was the president of Shares when he executed the lease guaranty and that the board of directors had not acted on the matter. These circumstances clearly place Beck's execution of the guaranty within the scope of authority delegated by Shares' by-laws.

■■■ Furthermore, we note that, by its conduct, Shares held Beck out as possessing authority to act in its behalf. In the instant case, it is undisputed that Shares selected Beck to be president, chief executive officer, and chairman of its board of directors. By placing him in the three most powerful positions within its corporate management structure, we conclude that Shares held Beck out as possessing authority to act on its behalf. Although the title given an officer of a corporation is not determinative of his authority, when he is clothed with titles implying general powers (i.e., president, chief executive officer, and chairman of the board), the business public and courts may fairly presume he is what the corporation holds him out to be. *See Koven v. Saberdyne Systems, Inc.*, 128

the guaranty, he was the president, chief executive officer and chairman of the board of directors of both CAMCO and Shares.

Ariz. 318, 322, 625 P.2d 907, 911 (App. 1980). In view of the established and undisputed facts, GM's reliance on this manifestation of authority was reasonably justified.

In view of the foregoing, we conclude that appellants failed to raise any genuine issues of material fact with regard to the authority of Beck to bind Shares on the guaranty. *See Cote,* 128 Ariz. at 444, 626 P.2d at 608; *Warren v. Mangels Realty,* 23 Ariz.App. 318, 321, 533 P.2d 78, 81 (App. 1975).

## DAMAGES

■ Appellants CAMCO and Shares argue that GM failed to establish by competent evidence the extent of its damages as required by Rule 56(e), Arizona Rules of Civil Procedure. They contend that a portion of the affidavit submitted by GM in support of its claim for damages was based on hearsay. The hearsay statements cited by appellants concern payment of utility bills, maintenance and cleaning services, and brokerage fees.

■ Rule 56(e), Arizona Rules of Civil Procedure, provides that affidavits submitted in support of a motion for summary judgment must be based on personal knowledge, setting forth facts which would be admissible in evidence and establishing the affiant's competence to testify to those facts. The affidavit supporting GM's claim for damages was made by Gary Martinson, the president of GM. Martinson verified that:

1. I am the President of GM Development Corporation.

2. As the President, I am personally familiar with the books and records of GM Development Corporation. I make this Affidavit after a review of the regular business records of GM Development Corporation.

3. This Affidavit is made on personal knowledge and I am competent to testify in the matters stated herein.

The foregoing verified statements set forth the affiant's personal knowledge of the factual basis for the affidavit and his competence to testify regarding the facts set forth.

The record reflects that the major portion of damages claimed by GM are for rent that was due and owing. The statements related to charges for utility bills, maintenance and cleaning services, and brokerage fees, which comprise only a small percentage of the total claim, fall within the scope of the business records exception to the hearsay rule. *See* Rule 803(6), Arizona Rules of Evidence. Accordingly, they constitute admissible evidence.

■ Appellants further contend that GM failed to demonstrate that it took reasonable steps to mitigate its damages. We disagree. The affidavit of William Dutton, a real estate agent with CBS Property Services, Inc., sets forth, with specificity, GM's efforts to mitigate its damages. GM employed CBS Property Services, Inc. as the leasing and sales agent for the property vacated by appellants. Dutton's affidavit establishes his personal knowledge of the factual basis for the affidavit and his competence to testify regarding the specific efforts made by his agency to sell or relet the property. It thus conforms to the requirements of Rule 56(e), Arizona Rules of Civil Procedure.

Appellants failed to present any competent evidence to controvert GM's affidavits or to demonstrate that GM's efforts to mitigate its damages were unreasonable. Accordingly, we conclude that, as a matter of law, GM is entitled to summary judgment on the issue of damages. *See Schroeder v. Hudgins,* 142 Ariz. 395, 690 P.2d 114 (App.1984).

## RULE 54(b)

■ Appellants final argument is that the trial court abused its discretion by including Rule 54(b) language in its formal judgment, resulting in a final, appealable judgment on the breach of contract claim. *See* Rule 54(b), Arizona Rules of Civil Procedure. Appellants contend that a number of legal and factual issues determined by the trial court pursuant to its entry of partial summary judgment will have to be relitigated in the continuing action on the

remaining counts of the complaint. Therefore, they argue that entry of final judgment on the breach of contract claim was improper.

■ Whether to render a judgment final by the inclusion of Rule 54(b) language is a decision that lies within the sound discretion of the trial court. *Curtiss–Wright Corporation v. General Electric Company*, 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1, 11 (1980); *Continental Casualty v. Superior Court*, 130 Ariz. 189, 191, 635 P.2d 174, 176 (1981). Such a ruling by the trial court will not be disturbed on appeal absent a showing that the court abused its discretion. *State v. Veatch*, 132 Ariz. 394, 396, 646 P.2d 279, 281 (1982). Abuse of discretion has been defined as "discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Torres v. North American Van Lines, Inc.*, 135 Ariz. 35, 40, 658 P.2d 835, 840 (App.1982).

■ Rule 54(b) allows the trial court when presented with multiple claims or multiple parties, to enter final judgment as to one or more but fewer than all of the claims or parties. However, final judgment on any particular claim is proper only if the nature of the adjudicated claim is "such that no appellate court would have to decide the same issues more than once even if there are subsequent appeals." *Continental Casualty*, 130 Ariz. at 191, 635 P.2d at 176 (quoting *Curtiss–Wright Corporation v. General Electric Company*, 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1, 11 (1980)). The Arizona Supreme Court has held that "[f]or the purpose of rule 54(b), multiple claims exist if the factual basis for recovery states a number of different claims that could have been enforced separately." *Continental Casualty*, 130 Ariz. at 191, 635 P.2d at 176 (quoting *Title Insurance Company of Minnesota v. Acumen Trading Company*, 121 Ariz. 525, 526, 591 P.2d 1302, 1303 (1979)). This does not mean that the adjudicated claim must be completely distinct

from any remaining claims in the complaint or that it arise from a different occurrence or transaction. *Continental Casualty*, 130 Ariz. at 191, 635 P.2d at 176.

In the case before us, the complaint contained four counts at the time the trial court was considering appellants' objections to the form of judgment. Count I alleged that Community Savings and Loan Association, a co-defendant at trial, was responsible for the debt owed by CAMCO and Shares pursuant to an alter ego theory of liability. Count II alleged breach of the lease agreement by CAMCO and breach of the guaranty by Shares. Counts III and IV alleged fraud and racketeering with regard to construction of the leased property, obtaining construction loans, and CAMCO's signature on a tenant estoppel certificate.[6]

Clearly, the breach of contract claim requires proof of different facts than would be required for the fraud, racketeering, and alter ego claims. Although there may be some overlap in the factual issues litigated on the various claims, this does not preclude entry of final judgment on the breach of contract claim. *See Continental Casualty*, 130 Ariz. at 191, 635 P.2d at 176. Furthermore, the fact that GM may file future actions for rent accruing after entry of partial summary judgment in this matter is irrelevant. Such a complaint would be an entirely separate action arising from appellants' conduct over a different time frame from the matter presently before us. Consequently, the possibility of such future actions does not make entry of final judgment in this matter improper.

Accordingly, we conclude that the trial court did not abuse its discretion by including Rule 54(b) language in the formal judgment on the motion for partial summary judgment.

### ATTORNEYS' FEES

■ GM has requested attorneys' fees in connection with this appeal. The claim

---

6. Count V, requesting injunctive relief, was dismissed on February 29, 1988, prior to the trial court's consideration of GM's motion for partial summary judgment.

is made pursuant to the terms of the lease agreement and, alternatively, A.R.S. § 12–341.01. Without addressing the terms of the lease agreement, we conclude that GM is entitled to an award of attorneys' fees and costs for representation on this appeal pursuant to A.R.S. § 12–341.01. Accordingly, and in view of our disposition, it is ordered granting GM's request for attorneys' fees against appellants. GM is directed to file a statement in accordance with Rule 21, Arizona Rules of Civil Appellate Procedure.

Affirmed.

GERBER and McGREGOR, JJ., concur.