880 P.2d 1090

**Elizabeth A. MAXWELL, Plaintiff–Appellant,**

v.

**FIDELITY FINANCIAL SERVICES, INC., an Arizona corporation, Defendant–Appellee.**

**No. 1 CA–CV 91–0485.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 28, 1993.

Review Granted Oct. 4, 1994.

---

DeConcini, McDonald, Brammer, Yetwin & Lacy, P.C. by Christina Urias, Phoenix, for plaintiff-appellant.

Richard J. Hertzberg, Phoenix, for defendant-appellee.

## OPINION

CONTRERAS, Judge.

Elizabeth A. Maxwell ("Maxwell") appeals the trial court's grant of Appellee Fidelity Financial Services' ("Fidelity") motion for summary judgment and dismissal of her complaint. The central issue is whether the trial court erred in determining that a loan transaction between Fidelity and Maxwell was valid and not unconscionable, and therefore not an unenforceable contract as asserted by Maxwell. We conclude by a majority of this panel that the trial court properly granted Fidelity summary judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

In reviewing the trial court's grant of Fidelity's motion for summary judgment, this Court will view the evidence and inferences to be drawn from that evidence in a light favorable to the nonmoving party. *Hill–Shafer Partnership v. Chilson Family Trust,* 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990). We will affirm the trial court's grant of summary judgment if the evidence the parties produced "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ariz.R.Civ.P. 56(c).

In December of 1984, Maxwell and her husband, Charles Maxwell, purchased a solar water heater from Steve Lasica, a door-to-door salesman for National Solar Corporation ("National"). Lasica arranged an appointment between the Maxwells and Fidelity to finance the purchase. In connection with this 1984 transaction, Maxwell signed numerous documents, including a loan contract, a deed of trust, a truth-in-lending disclosure form, and a promissory note and security agreement.[1]

In July of 1988, before she had completely paid off the 1984 loan, Maxwell and her husband requested an additional cash loan of $800 from Fidelity. Fidelity agreed. In the 1988 transaction, the balance on the 1984 loan was consolidated into the new transaction. In connection with this second transaction, Maxwell and her husband signed a new promissory note and security agreement, deed of trust, truth-in-lending form, deed of release and reconveyance, and notice of right to cancel. Maxwell did not cancel. Rather, she commenced and continued making payments on the consolidated amount for approximately two more years.

On October 22, 1990, Maxwell filed her complaint against Fidelity, requesting the trial court to declare the promissory notes, security agreements, and deeds of trust on her home to be unconscionable and void. In addition, she requested damages and attorney's fees. After conducting discovery, Fidelity filed a motion for summary judgment. The trial court found that the doctrine of novation barred Maxwell's recovery and, therefore, granted Fidelity's motion for summary judgment. The trial court denied Fidelity's request for attorney's fees based on the financial hardship that would occur to Maxwell. Following entry of judgment and the trial court's denial of her motion for reconsideration, Maxwell timely appealed.

---

1. The water heater did not work properly and was improperly installed. Maxwell was eventually required to disconnect the water heater because the City of Phoenix declared it a hazard.

## II. DISCUSSION

### A. General Considerations

When Maxwell responded to Fidelity's motion for summary judgment, she did not file any separate affidavits. Instead, she relied on her deposition which Fidelity had taken, documents attached to Fidelity's motion for summary judgment, and her unverified complaint. We note that a party opposing a motion for summary judgment may not "rely solely on unsworn assertions of fact to controvert a motion which is supported by sworn fact." *GM Development Corp. v. Community Am. Mortgage Corp.*, 165 Ariz. 1, 5, 795 P.2d 827, 831 (App.1990) (allegations in an unverified complaint are unsworn assertions that are insufficient to controvert competent evidence filed by the movant in support of the motion for summary judgment); *see also* Ariz.R.Civ.P. 56(e) (to prevent grant of summary judgment motion, the opposing party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial").

We will not affirm a grant of summary judgment, however, even in the absence of controverting evidence, if the motion and evidence filed in support of the motion for summary judgment are insufficient to show that no material issue of fact exists or that the movant is entitled to judgment as a matter of law. *United Bank v. Allyn*, 167 Ariz. 191, 194–96, 805 P.2d 1012, 1015–17 (Ct.App.1990); *GM Development*, 165 Ariz. at 5, 795 P.2d at 831. The evidence is insufficient to withstand a motion for summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

### B. Novation

In order for the 1988 agreement to be considered a novation which extinguishes the parties' rights and obligations under the prior contract, the party claiming a novation occurred must show the following:

> The essential elements of a valid novation are a previously valid obligation, the agreement of all parties to a new contract, the extinguishment of the old obligations, and the validity of the new one.... It is not essential for a valid novation that assent and acceptance of the terms thereof be shown by express words, either spoken or written, but may be implied from the facts and circumstances surrounding the transaction and the conduct of the parties thereafter.

*United Sec. Corp. v. Anderson Aviation Sales Co., Inc.*, 23 Ariz.App. 273, 275, 532 P.2d 545, 547 (1975) (citations omitted); *see also Western Coach Corp. v. Roscoe*, 133 Ariz. 147, 152, 650 P.2d 449, 454 (1982); *Cely v. DeConcini, McDonald, Brammer, Yetwin & Lacy, P.C.*, 166 Ariz. 500, 501 n. 2, 803 P.2d 911, 912 n. 2 (Ct.App.1990).

Maxwell argues that the trial court erred in granting Fidelity's motion for summary judgment based on the doctrine of novation on the ground that there are material issues of fact as to two elements of this defense:

(1) Whether the prior (1984) obligation was a valid, enforceable contract; and

(2) Whether the parties had mutually agreed to substitute the 1988 contract for the 1984 obligation.

As a preliminary matter, we conclude that the evidence in the record is insufficient to show that an agency relationship existed between Fidelity and National. Maxwell's deposition testimony indicates that she understood that Lasica and the National Solar Corporation were separate from Fidelity. For example, when Maxwell experienced problems with the water heater, she called Lasica, not Fidelity. Similarly, she stated several times during her deposition that she never complained about problems with the water heater to Fidelity because she understood that she only borrowed money from Fidelity and that they were not responsible for defects in the merchandise or installation. Maxwell further admitted that Fidelity was not advised of any problems she had with the

water heater until 1990, although the problems existed since the 1984 installation. Even viewing the deposition testimony in a light favorable to Maxwell, based on the *Orme School* test there was insufficient evidence of an agency relationship between Fidelity and Lasica and the National Solar Corporation to defeat a motion for summary judgment on this issue. *See* 166 Ariz. at 309, 802 P.2d at 1008. The dissent disagrees with the conclusion that there was insufficient evidence of an agency relationship to defeat a motion for summary judgment. Although the dissent posits that "a finder of fact could infer from this that National and Fidelity were engaged in a common effort to sell hot water heaters at what was almost surely an enormous profit to both", the dissent readily admits in an accompanying footnote that "The record is sparse on this point." The footnote states that Maxwell did not depose any officer or employee of Fidelity and that such omission was perhaps due to financial constraints. Whatever the reason, the immutable fact remains that, based upon *the record* in this case, there simply is no evidence that would rise to the level of presenting a genuine issue of material fact as to "agency" let alone any speculation of a "joint venture." Again, from a fair, objective reading of Maxwell's deposition, it can only be concluded that she did not believe there was an agency relationship. More importantly, Maxwell produced nothing to suggest, let along establish for factual consideration that there was an agency relationship.

The central issue in this case is whether the 1984 loan transaction was a valid or an unconscionable, and therefore unenforceable, contract. Maxwell contends that the issue of "unconscionability" of a contract is always a question of fact and, therefore, the trial court erred in granting Fidelity's motion for summary judgment.

This Court, however, has recently determined that "[u]nconscionability is a question of law for the court to decide." *Angus Medical Co. v. Digital Equip. Corp.*, 173 Ariz. 159, 167 n. 3, 840 P.2d 1024, 1032 n. 3 (Ct.App. 1992) (adopting Restatement (Second) of Contracts § 208, cmt. f (1981)). Thus, in reviewing Fidelity's motion for summary judgment, we will determine whether there are underlying material issues of fact concerning the validity of the parties' contract.

Maxwell argues that the 1984 loan transaction constituted an adhesion contract, that is, a form contract with terms she neither negotiated nor could have negotiated. Maxwell points out that although she read portions of the contract documents evidencing the 1984 loan transaction, she did not read them in their entirety and did not fully understand the implications of the documents that she was signing. Accepting the premise that the loan documents constituted an adhesion contract which Maxwell neither read in its entirety nor completely understood, however, does not make the agreement unconscionable and unenforceable. Such a contract will be enforceable if it is within "the reasonable expectations of the adhering party," and is not unconscionable. *Broemmer v. Abortion Servs., Ltd.*, 173 Ariz. 148, 151, 840 P.2d 1013, 1016 (1992).

The failure to explain the terms sought to be enforced may be sufficient to raise an issue of fact concerning whether the terms were within the nondrafting party's reasonable expectations. *Id.* at 151–52, 840 P.2d at 1016–17; *see also Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 682 P.2d 388 (1984); Restatement (Second) of Contracts § 211. Although Maxwell testified throughout her deposition that she did not understand that she would lose her house if she failed to make payments on her 1984 loan obligation to Fidelity, the loan documents and deed of trust clearly impose a lien on her property and she admitted that Fidelity's employee who handled the transaction explained the 1984 transaction to her. Maxwell, a high school graduate, did not request any further explanation of the terms of the documents despite being given the opportunity to do so. Furthermore, an affidavit by Fidelity's employee was filed stating that it was his usual practice to explain the disputed terms to all clients. In addition, Maxwell testified that she understood that when she signed a deed of trust in connection with the purchase of her home in 1972 that she could lose her home if she failed to make the payments.

Given the clarity of numerous provisions in the loan documents stating that the lender was taking a security interest in her home, her previous experience with similar documents, and the fact that Fidelity gave her a specific opportunity to ask questions about the terms of the loan documents she signed after the transaction was explained to her, Maxwell's subsequent statements that she did not understand that she would lose her home if she failed to make payments on the loan is insufficient evidence to show that such a provision in the documents was beyond her reasonable expectations. *See Orme School*, 166 Ariz. at 309, 802 P.2d at 1008.

■ Concerning Maxwell's claim that the contract was unenforceable because it was unconscionable, her evidence is insufficient to raise a material issue of fact. In Arizona, there are two kinds of unconscionability that can lead to this Court striking a contract term or invalidating the contract in its entirety: "procedural unconscionability, i.e., something wrong in the bargaining process, and substantive unconscionability, i.e., the contract terms per se." *Pacific Am. Leasing v. S.P.E. Bldg. Sys.*, 152 Ariz. 96, 103, 730 P.2d 273, 280 (Ct.App.1986). Maxwell claims both forms of unconscionability apply.

We conclude however, based upon the preceding discussion and our review of the record that Maxwell has raised no issue of material fact supporting her claim of procedural unconscionability. Maxwell's claim relates to substantive unconscionability. In this regard, Maxwell argues that two of the terms of the contract are unconscionable: (1) the financing terms, and (2) the security interest in her home. Her argument concerning the invalidity of the lien on her home relies on her lack of notice concerning these terms, i.e., that the terms were beyond her reasonable expectations in making the contract. Her argument is best resolved in terms of the reasonable expectations doctrine previously discussed.

Maxwell's objection to the financing terms is based on her contention that the solar water heater had an inflated price and the loan had an excessive interest rate, as evidenced by the fact that the required payments over the course of the 1984 and 1988

loan transactions totaled almost the amount for which Maxwell purchased her residence. As was previously discussed, Maxwell failed to show that the sellers of the water heater were agents of Fidelity. In fact, the record clearly indicates she knew otherwise. There was no proof of any nexus between Fidelity and National. Consequently, any alleged inflated price of the water heater is not attributable to Fidelity.

Concerning her argument that the total payments approximated the original purchase price of her residence, there is no evidence in the record concerning the value of her residence at the time of the purchase of the solar water heater or any evidence as to the value of solar water heaters installed in a residence. The remainder of the terms, including the interest, the terms of the loan, and the total of payments due, was clearly spelled out in the loan documents. Maxwell does not argue that these terms were not adequately explained to her. Moreover, without objection or protest, she made the required payments for several years.

Maxwell failed to present sufficient evidence in the trial court to raise material issues of fact either that the 1984 loan agreement was invalid or unconscionable or that the lien on her residence was beyond her reasonable expectations. We therefore affirm the trial court's conclusion that the 1984 loan transaction underlying the 1988 loan transaction was a valid obligation.

■ We next consider the validity of the 1988 transaction. In this regard Maxwell does not contest the validity of her obligation to repay the $800 borrowed in 1988 or the amounts expended for her credit life insurance in connection with the 1988 transaction. Instead, Maxwell argues that she did not understand the transaction and that there was no evidence that she intended to extinguish the 1984 obligation when she borrowed additional money in the 1988 consolidation loan.

In the absence of evidence to contradict the written contract, however, the documents evidencing the 1988 loan transaction constituted sufficient evidence of Maxwell's intent to substitute the 1988 obligation for the 1984

obligation. Maxwell's assent to the transaction and her acceptance of the terms are evidenced by the express language of the documents, the fact that she had previous knowledge of the effect of the 1984 loan documents, and the fact that she had made payments on the consolidated loan.[2]

■ A few observations regarding the dissent need to be expressed. The dissent is predicated upon the engrafted determination that the underlying (1984) contract could be found "unconscionable." There follows a discussion of the general propositions of law pertaining to unconscionability of contracts. What is overlooked by the dissent is the *record* in the present case and the failure by Maxwell to demonstrate that a genuine issue of material fact exists regarding the question of unconscionability. The dissent seems to speculate on what a fact finder could conclude. However, speculation cannot substitute for the requirement that a party must present sufficient controverting materials to demonstrate that a genuine issue of material fact exists as to critical issues. Maxwell totally failed to do.

We uphold the trial court's grant of Fidelity's motion for summary judgment. The 1984 loan documents showed a valid promissory note and deed of trust and Maxwell failed to raise a material issue of fact that the agreement evidenced by these documents was beyond her reasonable expectations or was unconscionable. Furthermore, the 1988 loan documents evidence a consolidation of the 1984 loan transaction with the 1988 additional loan amount and evidence a novation in which the 1988 agreement was substituted for and extinguished the 1984 obligation. Maxwell failed to provide evidence sufficient to rebut the intent for novation evidenced by these loan documents.

## C. Attorney's Fees

■ Fidelity requests attorney's fees for work completed in the trial court and on appeal pursuant to Ariz.R.Civ.P. 11 and Ariz. Rev.Stat.Ann. sections 12–341.01(C), 12–349. The trial court denied Fidelity's request for fees, however, and Fidelity did not cross-

appeal this denial. This Court, therefore, has no jurisdiction to review the trial court's denial of fees. *See Exodyne Properties v. City of Phoenix,* 165 Ariz. 373, 378–79, 798 P.2d 1382, 1387–88 (Ct.App.1990). In the exercise of our discretion, we decline to award Fidelity its fees on this appeal.

For the foregoing reasons, we affirm the judgment of the trial court.

EHRLICH, P.J., concurs.

KLEINSCHMIDT, Judge, dissenting.

I respectfully dissent. I think the contract that Elizabeth Maxwell entered into was unconscionable. The water heater, which turned out to be worthless, cost $6,500. With finance charges of 19.5%, and offsetting the tax credit that Maxwell received, the total cost exceeded $14,000 secured by a lien on Maxwell's home.

A contract for the sale of goods, under A.R.S. section 47–2302(A), may be voidable as unconscionable. "Unconscionability includes both procedural unconscionability, i.e., something wrong in the bargaining process, and substantive unconscionability, i.e., the contract terms per se." *Pacific Am. Leasing Corp. v. S.P.E. Bldg. Sys., Inc.,* 152 Ariz. 96, 103, 730 P.2d 273, 280 (App.1986). While courts are split on whether both types of unconscionability must exist before a contract is voidable, James J. White and Robert S. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 4–7, at 163–65 (2d ed. 1980), I agree with White and Summers that the better rule is that either kind of unconscionability will suffice. White and Summers, *supra,* at 165. *Pacific Am. Leasing* lends support to this conclusion. There, the only claim the plaintiff made was one of substantive unconscionability. We rejected that claim on its merits without suggesting that a finding of procedural unconscionability was also necessary before the plaintiff could avoid the contract. *Pacific Am. Leasing,* 152 Ariz. at 103, 730 P.2d at 280.

---

**2.** Maxwell's deposition testimony clearly demonstrates that in late 1986 or 1987 she knew that

there was a "second mortgage" on her home due to the 1984 loan transaction.

There is ample case law for the proposition that charging an excessive price for a consumer item is, in and of itself, substantively unconscionable. *See, e.g., American Home Improvement, Inc. v. MacIver,* 105 N.H. 435, 201 A.2d 886 (1964) (commission and finance charge of $1,600 on goods and services worth $950 was unconscionable); *Toker v. Westerman,* 113 N.J.Super. 452, 274 A.2d 78 (1970) (total price including interest and insurance of $1,229 for freezer worth $400 held unconscionable). *See also* White and Summers, *supra,* at 155–60 and cases cited therein. Where a contract is substantively unconscionable because of excessive price, the buyer's awareness of the terms of the agreement is immaterial.

Even if both substantive and procedural unconscionability must exist before a contract is voidable, there is enough procedural unconscionability here, coupled with the excessive price, to preclude the enforceability of the contract. As White and Summers note, "it appears that a contract that is one hundred pounds substantively unconscionable may require only two pounds of procedural unconscionability to render it unenforceable and vice versa." *Supra,* at 165. The record discloses that Maxwell has a high school education and has been employed as a cleaning woman and factory worker for low wages. She asserted that she did not realize that the papers she signed placed a lien against her house until three years after the water heater was installed when she was so informed by a repairman. *See Johnson v. Mobil Oil Corp.,* 415 F.Supp. 264 (E.D.Mich.1976) (intelligence and business acumen are indicia of procedural unconscionability); *Jefferson Credit Corp. v. Marcano,* 60 Misc.2d 138, 302 N.Y.S.2d 390 (Civ.Ct.1969) (failure to understand, despite large black type, is to be considered in assessing procedural unconscionability); *William v. Walker–Thomas Furniture Co.,* 350 F.2d 445 (D.C.Cir.1965) (lack of education and use of fine print are to be considered in assessing procedural uncon-

scionability); *see also* White and Summers, *supra,* at 153–54 (factors to consider in assessing procedural unconscionability include assumed consumer ignorance, lack of education, financial status, and seller's guile).

The majority concludes that there is not enough in the record to show that an agency-type relationship existed between National Solar Corporation, the company that sold the water heater, and the defendant, Fidelity Financial Services. I disagree. I begin with the observation, based on common knowledge, that it is not uncommon for a retailer to have an ongoing relationship with a specific lender. In this case, when Maxwell told National's salesman that she could not afford the water heater, he assured her that was not a problem because "we have a great financial plan." He steered her to Fidelity and told her to take her "house papers" with her. While she was transacting the loan, an employee of Fidelity reassured her about her purchase of the water heater, telling her that Fidelity had "done a lot of business with solar systems this year," and saying that he believed that she would enjoy her purchase and benefit from it. A finder of fact could infer from this that National and Fidelity were engaged in a common effort to sell and finance hot water heaters at what was almost surely an enormous profit to both.[3] In other words, a finder of fact could conclude that National and Fidelity were engaged in a joint venture. *See Helfenbein v. Barae Inv. Co.,* 19 Ariz.App. 436, 439, 508 P.2d 101, 104 (1973) (joint venture may be inferred from acts and conduct of parties); *Muccilli v. Huff's Boy's Store, Inc.,* 12 Ariz.App. 584, 588, 473 P.2d 786, 790 (1970) (where rights of a third party are involved, a joint venture can be inferred from declarations of parties). The majority says the record shows that Maxwell did not believe there was an agency relationship between National and Fidelity. Even if the majority is correct, what Maxwell may or may not have understood about the

---

**3.** The record is sparse on this point. For example, the Plaintiff did not depose any officer or employee of Fidelity. This may be the result of financial constraints. The trial briefs disclose that counsel for the Plaintiff took this case *pro bono publico* through the Volunteer Lawyers Program of the Maricopa County Bar Association.

In addition, the trial judge refused to award attorney's fees to Fidelity because he found that such would create an undue hardship on the Plaintiff. As I have already noted, the record discloses that the Plaintiff worked at jobs which paid a modest wage.

legal nuances of the relationship between National and Fidelity, and the ramifications of that relationship for her, is immaterial. *See Young v. Environmental Air Products, Inc.,* 136 Ariz. 206, 210, 665 P.2d 88, 92 (App.1982) (conclusions of witness regarding legal relationships are immaterial).

The trial court found that Maxwell's borrowing an additional $800 from Fidelity was a novation of the agreement which precluded her prevailing on any theory of unconscionability. I think this was error because a novation cannot take place unless the initial agreement was valid. *United Sec. Corp. v. Anderson Aviation Sales Co.,* 23 Ariz.App. 273, 275, 532 P.2d 545, 547 (1975). As the majority notes, the Plaintiff is not seeking to declare her obligation to repay the $800 void.

I have considered Fidelity's other arguments regarding the applicability of the statute of limitations, the failure to give notice of defect, and the effect of written warranties. In my opinion, they lack merit.

I would reverse the order of the trial court granting summary judgment and remand this case to the trial court for a trial on the merits of whether there was an agency relationship between National and Fidelity.