NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SERGIO C., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, M.C.,
A.C., *Appellees.*

No. 1 CA-JV 17-0134
FILED 11-7-2017

Appeal from the Superior Court in Yuma County
No. S1400JD20140562
S1400JD20140561
The Honorable Mark W. Reeves, Judge

**AFFIRMED**

COUNSEL

Office of the Legal Defender, Yuma
By Terri L. Capozzi
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee DCS*

---

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Margaret H. Downie (retired) joined.

---

**B R O W N**, Judge:

¶1      Sergio G. ("Father") timely appeals the superior court's order terminating his parental rights to M.C. and A.C. based on 15 months' time-in-care.  Because Father has shown no error, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2      M.C. and A.C. were born in 2003 and 2005, respectively.  As young children, they lived with their mother and, frequently, with their maternal grandmother ("Grandmother").  Except for the first two months of M.C.'s life, neither child lived with Father, who was incarcerated from 2005 to 2008 and then moved to San Diego.  Father had a limited relationship with the children and saw them only a few times per year for birthdays and holidays.

¶3      In December 2014, the Department of Child Safety ("DCS") filed a dependency petition alleging the children's mother was unable to parent because of neglect and incarceration.[1]  As to Father, DCS alleged neglect due to substance abuse, anger issues, and a history of domestic violence.  After Father refused DCS's request that he participate in a drug test and admitted that he had used methamphetamine the preceding month, DCS placed the children with Grandmother.

¶4      DCS then offered services to Father, including random urinalysis testing, a substance abuse assessment and treatment, domestic violence and anger management counseling, parent aide, parenting education, and supervised visits with the children.  In particular, DCS referred Father to Vista Hill Foundation in San Diego for substance abuse, domestic violence, and behavioral health services, but he failed to complete the intake process and was closed out of services in June 2015.  Father did

---

[1]      The court later terminated the mother's parental rights, and she is not a party to this appeal.

not contact DCS during this period, despite DCS's and Vista Hill's efforts to reach him. He also failed to appear at the initial dependency hearing in March 2015 when the superior court found the children dependent as to Father and adopted a case plan of family reunification.

¶5 In July 2015, Father appeared at a court hearing and claimed that DCS had not referred him for any services. In response to DCS's assertion that it had been trying to reach Father, he offered DCS updated contact information. DCS then referred Father again for substance abuse assessment and treatment, domestic violence and anger management classes, parenting classes, and supervised visitation. Father claimed to be attending Narcotics Anonymous classes in San Diego but never provided any documentation to verify his participation. He also did not request a visit with the children until late September 2015 and then ended that visit, which occurred in October 2015, early.

¶6 From October 2015 until March 2016, Father contacted DCS only once (to ask for his attorney's information), did not engage in services, and did not visit the children. In December 2015, the superior court approved a change of the case plan to reunification concurrent with severance and adoption.

¶7 In March 2016, Father appeared at a court hearing, asked for visitation and services, and provided a negative drug sample. Later that month, DCS referred Father to AmeriPsych for parent-aide services and the McAlister Institute for substance abuse education, parenting classes, counseling and drug testing. He also began visiting with the children twice per month.

¶8 In April 2016, at DCS's request and over Father's objection, the superior court changed the case plan to severance and adoption. By that time, the children had been in care for 16 months. DCS's motion to terminate alleged, as to Father: (1) abandonment, (2) nine-months' time-in-care, and (3) 15-months' time-in-care. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1), B(8)(a), (B)(8)(c).

¶9 From April 2016 through December 2016, Father continued his visits with the children and completed his services at McAlister, although he missed some appointments and tested positive for alcohol use in June 2016. Father also sought additional counseling services from another provider.

**¶10**        After a three-day evidentiary hearing, the superior court granted the motion to terminate on all three grounds, also finding termination was in the children's best interests.  Father timely appealed.

## DISCUSSION

**¶11**        To terminate parental rights, a court must find by clear and convincing evidence at least one statutory ground articulated in A.R.S. § 8-533(B) and must find by a preponderance of the evidence that termination is in the child's best interests.  *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).  Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts[,]" this court will affirm an order terminating parental rights if reasonable evidence supports it.  *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted).

**¶12**        Under the 15 months' time-in-care ground, DCS was required to prove that (1) DCS made diligent efforts to provide appropriate reunification services, (2) Father was unable to remedy the circumstances that caused the children to be in out-of-home placement, and (3) a substantial likelihood existed that Father would not be capable of exercising proper and effective parental care and control in the near future.  A.R.S. § 8-533(8)(c).  Father challenges only the superior court's finding that DCS made a diligent effort to provide appropriate reunification services.[2]

**¶13**        DCS satisfies the requirement that it made a diligent effort to provide appropriate reunification services if it provides the parent with "time and opportunity to participate in programs designed to help [him] become an effective parent."  *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).  However, DCS is not required to provide "every conceivable service or to ensure that a parent participates in each service it offers."  *Id.*

---

[2]    Father also argues DCS did not prove abandonment or that he substantially neglected or willfully refused to remedy the circumstances that caused the children to be in out-of-home care for nine months.  Because we affirm on the basis of the 15 months' time-in-care statutory ground, we do not address those arguments.  *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) (appellate court "need not address claims pertaining to the other grounds" if sufficient evidence supports any one ground upon which the superior court terminated parental rights).

¶14     DCS offered substantial evidence that it provided appropriate reunification services to Father over an extended period. DCS promptly referred Father to services after it took the children into care, but he failed to participate. When Father requested services in July 2015, DCS again made appropriate referrals. Although there was some delay in setting up services for Father, he also was out of contact with DCS during that time and not visiting the children. Once Father re-engaged in March 2016, DCS immediately established services for him in San Diego. On this record, the superior court properly concluded that DCS made the required "diligent effort to provide appropriate reunification services." A.R.S. § 8-533(8).

¶15     Father also challenges the superior court's finding that severance was in the children's best interests. The best interests assessment focuses on how "the child would benefit from a severance or be harmed by the continuation of the relationship." *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998). The best interests requirement may be met if the child is adoptable or the existing placement is meeting the child's needs. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004).

¶16     The superior court found termination was in the children's best interests because they would benefit from the stability of severance and adoption. Father concedes that it is not in the children's best interests to live with him in San Diego, but argues that rather than severing his parental rights, the court should have granted Grandmother a permanent guardianship.

¶17     At the time of termination, the children had lived almost their entire lives with Grandmother, and Yuma was the only home they had known. Although the children visited with Father throughout their lives, they did not bond with him, and he was never their day-to-day parent. Both children expressed that they wanted Grandmother to adopt them and desired no further involvement with DCS and the court. The superior court considered these specific circumstances in determining that the children would benefit from the stability of an adoption by Grandmother rather than a permanent guardianship. The court also found that the children's emotional and mental health would be negatively affected if the court ordered a permanent guardianship. On this record, we find no error.

¶18     We also reject Father's argument that severance and adoption was not in the children's best interests because Grandmother will harm the children by exposing them to their mother. The evidence showed that Grandmother allowed the children to see their mother when they asked to

do so, but Grandmother was careful to limit the contact and only allowed visits if mother was sober. There is no reason to believe that Grandmother would allow the children inappropriate contact with their mother in the future. Moreover, the record does not support Father's argument that Grandmother interfered with his relationship with the children during the dependency.[3]

## CONCLUSION

**¶19** For the foregoing reasons, we affirm the superior court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[3] We decline to consider Father's assertion that Grandmother restricted his visitation, since the severance ruling, in retaliation for this appeal. *See GM Dev. Corp. v. Cty. Am. Mortg. Corp.*, 165 Ariz. 1, 4 (App. 1990) (appellate court will not consider evidence not first presented to trial court).