NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOSE SARATIEL HEREDIA NIEBLAS, *Plaintiff/Appellant*,

*v.*

BONITAS CASITAS, LLC, et al., *Defendants/Appellees*.

No. 1 CA-CV 25-0156

FILED 02-19-2026

Appeal from the Superior Court in Maricopa County
No. CV2023-002536
The Honorable Randall H. Warner, Judge

**AFFIRMED**

COUNSEL

Law Offices of Kyle A. Kinney PLLC, Scottsdale
By Kyle A. Kinney
*Counsel for Plaintiff/Appellant*

Chester Law PC, Scottsdale
By Mark D. Chester
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Angela K. Paton and Judge Jennifer M. Perkins joined.

---

C A T L E T T, Judge:

¶1   This appeal stems from the second of two lawsuits Jose Saratiel Heredia Nieblas ("Nieblas") filed to recover excess amounts paid to redeem real property following a sheriff's sale. In addition to seeking those excess amounts through a declaratory judgment, Nieblas asserted claims against Bonitas Casitas, LLC ("Bonitas") and its sole member Linda Lynaugh ("Lynaugh") (collectively "BCL") for wrongful lis pendens, breach of statutory duty/negligence per se, and fraud. After discovery, the superior court granted summary judgment for Nieblas on his declaratory judgment claim and for BCL on Nieblas' remaining claims. The court also awarded BCL attorney fees and costs.

¶2   Nieblas appeals the summary judgment order and the attorney fee award. We affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3   Nieblas owned real property located at 4016 South 12th Street in Phoenix ("the Property"). On July 11, 2019, the Maricopa County Sheriff's Office ("MCSO") auctioned the Property to satisfy a judgment against Nieblas. Lynaugh attended the auction with non-party Gregory Best ("Best"). Bonitas won the auction, so MCSO executed a Sheriff's Certificate recognizing Bonitas as making the highest bid at $55,000.

¶4   The Sheriff's Certificate said the Property "is subject to redemption in six months pursuant to [A.R.S. § 12-1281 et seq.]" Nieblas could redeem the Property for $55,000, plus eight percent interest and any assessments or taxes Bonitas incurred before January 11, 2020. *See* A.R.S. §§ 12-1285(A); 12-1282(B).

¶5   On December 29, 2019, MCSO contacted Bonitas to ask for the amount of expenses it incurred for purposes of redemption. The next day, Lynaugh provided documents showing $6,411.51 in expenses. These additional expenses included $6,000 for "Unpaid Fair Market Value Rent" owed during the redemption period and other miscellaneous costs.

Lynaugh believed Bonitas was entitled to rent because Nieblas agreed to pay while he used the Property during the redemption period.

¶6 Based on the amounts Lynaugh provided, MCSO informed Nieblas he had to pay $65,997.50 to redeem the Property, and it provided him with a receipt reflecting that amount. But MCSO refused to provide a line-item description without receiving a subpoena requesting that information. Nieblas disputed the redemption amount but believed he did not have "enough time to make a judicial challenge" before the redemption period ended. He also believed he would lose the Property without payment. So he paid $65,997.50. MCSO executed a Sheriff's Deed conveying the Property to Nieblas, and it provided a check to BCL for $65,797.50.

¶7 On January 14, 2020, after Nieblas redeemed Property, Best recorded a Notice of Lis Pendens ("Notice") against the Property. The Notice referenced a quiet title action ("Quiet Title Action") Best and non-party Henry Cadriel ("Cadriel") had pending against Nieblas. The Notice did not mention Bonitas or Lynaugh, and neither were named parties in the Quiet Title Action.

## I.     First Lawsuit

¶8 In July 2020, Nieblas filed his first lawsuit ("First Lawsuit") against Bonitas, challenging the redemption amount for the Property. Nieblas alleged Bonitas overcharged him, and he sought declaratory relief and damages for breach of statutory duty. Nieblas also asserted a wrongful lis pendens claim against Best and Cadriel under A.R.S. § 33-420(A).

¶9 On January 12, 2023, the court dismissed the First Lawsuit without prejudice. The court did so for lack of prosecution because the parties had not complied with its November 28, 2022, deadline for filing a judgment, stipulation for dismissal, or joint status report. Nieblas moved for reconsideration, which the court denied.

## II.    Second Lawsuit

¶10 One month later, Nieblas filed a second lawsuit ("Second Lawsuit") challenging the redemption amount and the lis pendens. This time, Nieblas named only Bonitas and Lynaugh as defendants. Nieblas asserted claims for declaratory judgment, breach of statutory duty/negligence per se ("breach/negligence"), and common law fraud, and he again brought a wrongful lis pendens claim.

¶11        BCL moved to dismiss all claims on statute of limitations grounds.  Nieblas responded but also moved for leave to file a first amended complaint.  In responding to the motion to dismiss, Nieblas argued his declaratory judgment and breach/negligence claims were timely because "[t]he first part of the [savings] statute [A.R.S. § 12-504(A)], [is] applicable here, [and it] does not [give the] court discretion" to decide whether to allow him to refile those claims.

¶12        Nieblas' proposed amended complaint (1) added factual allegations that the savings statute applies to his declaratory judgment and breach/negligence claims, and (2) included an alleged date of discovery for his fraud claim.  BCL did not respond to Nieblas' request to amend the complaint.

¶13        The court granted Nieblas leave to file his amended complaint (that made BCL's motion to dismiss moot).  In its minute entry, the court concluded that the amended complaint added factual allegations not pleaded in the original complaint.  BCL answered the amended complaint and the parties then conducted discovery.

¶14        After discovery, both parties moved for summary judgment.  Nieblas moved for partial summary judgment on his declaratory judgment claim that BCL had to reimburse him for his inflated redemption payment.  BCL moved for summary judgment on all of Nieblas' claims.  They argued that Nieblas' breach/negligence and fraud claims were time-barred, and his wrongful lis pendens, fraud, and declaratory relief claims failed on the merits.

¶15        Following oral argument, the court granted Nieblas summary judgment on his declaratory judgment claim.  The court concluded, as a matter of law, that "Nieblas overpaid by $6,271.51, and that Bonitas Casitas received $6,271.51 more than it was entitled to."  The court granted BCL summary judgment on all remaining claims.  The court concluded Nieblas' fraud and breach/negligence claims were time-barred.  As to Nieblas' wrongful lis pendens claim, the court concluded that Nieblas had not presented evidence permitting "an inference that either [Bonitas] or Lynaugh caused the lis pendens . . . to be recorded."  Lastly, the court ordered the parties to submit proposed forms of judgment and requests for attorney fees and costs by November 12, 2024.

¶16        On November 13, 2024, at 12:04 a.m., BCL asked for approximately $54,000 in attorney fees incurred in the First and Second Lawsuits.  BCL sought fees and costs on grounds Nieblas unreasonably

expanded the litigation by asserting meritless claims and bringing two lawsuits in four years. *See* A.R.S. § 12-349(A)(1)–(3). Two of the four documents filed in support of their motion were for an unrelated matter.

**¶17** In response, Nieblas argued the court should deny BCL's fee request because they failed to provide the required supporting documents. Regardless, Nieblas argued the court should deny BCL's request because he prevailed by establishing that BCL overcharged him.

**¶18** After Nieblas responded, BCL filed an errata attaching the supporting documents for the correct matter. BCL also filed a reply and explained that they untimely filed the motion because of technical problems, and the misfiling was inadvertent. Over a week later, Nieblas moved to strike the errata alleging untimeliness and prejudice.

**¶19** The court awarded BCL $28,900 in attorney fees and $389 in costs for the Second Lawsuit and entered final judgment. In a minute entry explaining its fee award, the court deemed BCL's fee application timely. Relying on A.R.S. § 12-349(A)(3), the court awarded BCL attorney fees and costs incurred only in the Second Lawsuit because Nieblas unreasonably expanded the proceedings "by asserting meritless claims[.]" The court later denied Nieblas's motion to strike for lack of "good cause[.]"

**¶20** Nieblas timely appealed. We have jurisdiction. A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶21** Nieblas appeals the superior court's entry of partial summary judgment for BCL, award of attorney fees and costs to BCL, and denial of his motion to strike.

**¶22** As an initial matter, Nieblas attached certain filings to his opening brief from his First Lawsuit and asked that we take judicial notice of them. We will not consider evidence that is not part of the record on appeal. *GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 4-5 (App. 1990); *see also In re Ests. of Spear*, 173 Ariz. 565, 567 (App. 1992) ("New exhibits cannot be introduced on appeal to secure reversal"). We decline Nieblas' request to take judicial notice of certain filings from the First Lawsuit.

## I.        Summary Judgment for BCL

**¶23**        Nieblas argues the superior court erred in granting summary judgment to BCL on his wrongful lis pendens, fraud, and breach/negligence claims.  He contends there were genuine issues of material fact about whether BCL caused Best to record the Notice and when he should have discovered BCL's alleged fraud.  Nieblas argues the court erred by granting summary judgment on his breach/negligence claim because the court had determined that the savings statute applied to that claim.

**¶24**        Summary judgment is appropriate when "the moving party shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).  Under this standard, "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense," then summary judgment is proper. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).

**¶25**        On appeal, we determine de novo whether there are genuine issues of material fact.  *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195 (App. 1990) (appellate courts apply the same standard used by the superior court).  We view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences arising from the evidence in their favor.  *Doe v. Roe*, 191 Ariz. 313, 324 ¶ 34 (1998); *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 482 ¶ 13 (2002).

### A.        Wrongful Lis Pendens

**¶26**        Liability for wrongfully recording a document under A.R.S. § 33-420(A) requires that the alleged violator (1) cause to be recorded, (2) a document claiming an interest in real property, such as a lis pendens, (3) knowing or having reason to know that document is invalid. *See Wyatt v. Wehmueller*, 167 Ariz. 281, 284 (1991).  The superior court determined Nieblas did not meet his burden of persuasion because his evidence did "not permit an inference that either [Bonitas] or Lynaugh caused the lis pendens" to be recorded.

**¶27**        To support their motion, BCL included a declaration from Lynaugh stating that she "had no involvement in the preparation or recording of the [lis pendens] nor did [she] request Mr. Best or anyone else to record it."  "[F]acts alleged by affidavits attached to [] motion[s] for

summary judgment may be considered true," when such facts are not controverted by the opposing party. *Portonova v. Wilkinson*, 128 Ariz. 501, 502 (1981). Nieblas claims Lynaugh's testimony is unreliable, but a party opposing summary judgment cannot prevail based on a mere hope the jury will disbelieve uncontroverted testimony. *See Orme Sch.*, 166 Ariz. at 311.

**¶28** So to defeat summary judgment, Nieblas needed to produce "sufficient evidence demonstrating the existence of a genuine factual dispute as to" whether BCL caused Best to record the Notice. *See Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 119 ¶ 26 (App. 2008). *see also* Ariz. R. Civ. P. 56(a). Nieblas argues his evidence was sufficient to do so.

**¶29** The Notice does not reference Bonitas or Lynaugh. And neither Bonitas nor Lynaugh were named parties in the Quiet Title Action underlying the Notice. Still, Nieblas theorizes that Best had been an agent or member of Bonitas and only Bonitas had motive to record the lis pendens. Combining those two theories, Nieblas claims a jury could find that BCL caused Best to record the Notice. We disagree.

**¶30** In attempting to show BCL caused Best to record the Notice, Nieblas relied on several documents. None of them created a genuine issue of material fact.

**¶31** First, Nieblas relied on the "Judicial Enforcement Records" from MCSO concerning the July 2019 auction of the Property. Nieblas asserts the "vesting sheet" shows title to the Property would vest with Bonitas and the "bid log" identifies Best as winning the auction. Nieblas argues these two documents show Best acted as BCL's agent at the auction.

**¶32** The first document—the "vesting sheet"—is a single page of an untitled, undated form filled out by an unknown individual. The form lists "Bonitas Casitas LLC" in the "Vesting Name" section and "Greg Best" in the "Contact name" section. The second document—the "bid log"—is a single page with a list of cases identified by case number and party name, and with names and phone numbers of various individuals immediately below each case number. The top of the page includes the heading "Real Estate Sale July 11, 2019 10:00 A.M." Among the cases listed is "BEST VS. NIEBLAS" and Best's name and a phone number appear immediately below. Nieblas asserts that because Best's name is listed on the vesting sheet and the bid log, Best acted as BCL's agent.

**¶33** But Nieblas did not lay foundation supporting that these documents mean what he claims they do. *See* Ariz. R. Evid. 602. Perhaps Nieblas is correct that Best appeared at the auction and submitted the

winning bid for Bonitas, but he did not submit evidence from the individual who prepared those documents supporting that his view of them is correct. *Id.* But even if he had done so, there is no evidence that Bonitas instructed Best to bid at the auction, and more importantly, there is no evidence connecting that instruction to the later Notice. In other words, there is no evidence that if Best submitted the winning bid for the Property, he also acted as BCL's agent whenever he acted vis-à-vis the Property, including when he later recorded the Notice.

¶34　　　　Nieblas next relied on deposition testimony Best gave in 2018 in an unrelated action. During that deposition, Best said he had an "interest in a new company called Bonitas Casitas, LLC," and he and Lynaugh were members. From this admission, Nieblas thinks a reasonable person could conclude that BCL caused Best to record the Notice. Best's testimony would require the jury to assume that he remained a member in Bonitas two years later, in 2020. But even if Best remained a member in 2020, that does not mean every action he took vis-à-vis the Property was as an agent for Bonitas. Like his reliance on the vesting sheet and the bid log, Nieblas' reliance on Best's alleged membership in Bonitas is insufficient to show that Best recorded the Notice on BCL's behalf, particularly when the Notice did not mention BCL or any lawsuit involving either Bonitas or Lynaugh.

¶35　　　　Nieblas also relied on Best's filings in June 2021 in an unrelated justice court eviction action. Based on those documents, Nieblas argued that Best "prosecutes justice court eviction cases" on Bonitas' behalf. Tellingly, there is no reference to Bonitas or Lynaugh in any of these documents and no information supporting Nieblas' claim that Best prosecutes eviction actions for Bonitas.

¶36　　　　The last document Nieblas relied on was a 10-year lease development agreement signed by Lynaugh and Best in February 2012, eight years before Best recorded the Notice. The agreement concerns other real property Lynaugh owned near the Property. Nieblas contended the agreement shows Lynaugh and Best "shared a real estate development partnership." We fail to see how a development agreement Best entered with Lynaugh in 2012 supports that, eight years later, Best acted on BCL's behalf in recording a notice that neither mentioned BCL nor referenced litigation involving BCL.

¶37　　　　Nieblas' theory about BCL's motive for having the Notice recorded also misses the mark. He theorized BCL did so to prevent him from redeeming the Property. Contrary to that theory, Best recorded the Notice *after* Nieblas redeemed the Property. Even if one can use a lis

pendens to prevent redemption, one cannot use a lis pendens to prevent redemption once redemption has occurred.

¶38 At bottom, Nieblas claims BCL caused Best to record the Notice on its behalf to prevent redemption after redemption had already occurred. Nieblas claims a jury could find Best did so based on (1) a vesting sheet and bid log listing Best, (2) Best's testimony in 2018 that he had an interest in Bonitas, (3) Best's justice court filings in unrelated actions, and (4) a 2012 development agreement between Best and Lynaugh. To infer from these documents that Best was acting on BCL's behest when recording the Notice would require a jury "to pile inference upon inference, which stretches the evidence presented beyond the bounds of circumstantial evidence." *Dawson v. Withycombe*, 216 Ariz. 84, 103 ¶ 52 (App. 2007). The superior court did not err in granting summary judgment for BCL on Nieblas' wrongful lis pendens claim.

## B. Negligence and Fraud Claims

¶39 Nieblas next argues the superior court erred by granting summary judgment on his fraud and breach/negligence claims on statute of limitations grounds.

¶40 The limitations period for Nieblas's claims are: (1) three years for fraud, *see* A.R.S. § 12-543(3); (2) two years for negligence, *see* A.R.S. § 12-542; and (3) one year for breach of statutory duty, *see* AR.S. § 12-541(5). The court concluded Nieblas' claims accrued on January 2, 2020, when he had notice of any claims "arising from an excessive redemption amount." Nieblas filed his First Lawsuit in July 2020, and the court dismissed it in January 2023. By filing his Second Lawsuit in February 2023, more than three years after accrual, all three claims came too late. That is, unless those claims were tolled.

¶41 To save his claims, Nieblas must show that an exception to the statutes of limitations applied and delayed accrual. *Troutman v. Valley Nat'l Bank of Ariz.*, 170 Ariz. 513, 517 (App. 1992) (when a defendant establishes that a statute of limitations applies, the plaintiff must show that the limitations period was tolled); *see also Passmore v. McCarver*, 242 Ariz. 288, 292 ¶ 12 (App. 2017) (the plaintiff has the burden to show entitlement to relief under the savings statute).

### 1. Fraud and the Discovery Rule

¶42 Nieblas argues there was a genuine issue of material fact about when his fraud claim accrued. He asserts he did not know facts

supporting a "viable" fraud claim until March 2022.  BCL responds that the superior court was correct that Nieblas earlier knew about all facts necessary to bring a fraud claim and that Nieblas's discovery of additional facts "does not matter" because "a plaintiff need not know all relevant facts to trigger accrual."  We agree with BCL.

¶43         The discovery rule is an exception to the traditional rule that the statute of limitations accrues "when the act upon which legal action is based took place, even though the plaintiff may be unaware of the facts underlying his or her claim."  *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588 (1995).  The limitations period runs, not from the moment of the defendant's injurious conduct, but when a plaintiff knows or should know he has been injured and when he "knows or with reasonable diligence should know the facts underlying the cause."  *Roe*, 191 Ariz. at 322 ¶ 29; *Mister Donut of Am., Inc. v. Harris*, 150 Ariz. 321, 323–24 (1986) (applying the discovery rule to common law fraud claim).  A claim accrues when the plaintiff has "reason to connect the 'what' to a particular 'who' in such a way that a reasonable person would be on notice to investigate whether the injury might result from fault."  *See Walk v. Ring*, 202 Ariz 310, 316 ¶ 22 (2002).  The key inquiry is "whether a reasonable person would have been on notice to investigate."  *Id.* ¶ 24.

¶44         Nieblas concedes he knew the redemption amount was "grossly overinflated" on January 2, 2020.  He does not dispute that he also knew or had reason to know that BCL was the party responsible for communicating an inflated redemption amount to MCSO.  Still, Nieblas contends he did not know sufficient facts to support a "viable" fraud claim until March 2022, when he obtained documents from MCSO confirming Best's attempted acquisition of the Property.  He argues those documents for the first time supported "that the overcharge was purposeful" rather than the result of Lynaugh's unfamiliarity with the redemption process.  We disagree that receipt of those documents tolled accrual.

¶45         The statute of limitations "may begin to run before a person has actual knowledge of the fraud or even all the underlying details of the alleged fraud."  *Mister Donut*, 150 Ariz. at 323; *Coronado Dev. Corp. v. Super. Ct.*, 139 Ariz. 350, 352 (App. 1984) ("[A] person does not have to know every fact about his fraud claim before the statute begins to run.").  Because Nieblas knew by January 2, 2020, that he paid more than required to redeem the Property and that BCL was responsible, he was then on notice to investigate whether BCL committed fraud.  *Walk*, 202 Ariz. at 316 ¶ 22.

¶46      Nieblas argues he lacked sufficient knowledge because he later received documents from MCSO showing Best's involvement in the auction. Nieblas overlooks that he had three years after accrual to subpoena those documents from MCSO. Neither BCL nor Best prevented Nieblas from doing so as soon as he knew in January 2020 that BCL overcharged him for redemption. Moreover, it is unclear why Nieblas' fraud claim against BCL should be tolled until he believed Best had some role in the auction. By the time the court dismissed the First Lawsuit in January 2023, Nieblas possessed MCSO documents showing Best's purported role, and yet he did not seek to amend the complaint in the First Lawsuit to assert a fraud claim against BCL or Best.

¶47      The court therefore did not err in concluding that, as of January 2020, Nieblas knew he had overpaid for redemption and that BCL caused that overpayment. So the statute of limitations accrued then, and Nieblas' fraud claim brought in February 2023 as part of the Second Lawsuit was time-barred.

### 2.     Breach/Negligence and the Savings Statute

¶48      Nieblas next maintains the superior court erred by holding his breach/negligence claim was time barred. Nieblas argues the court, by allowing him to amend his complaint, determined that claim was timely under the savings statute. In its summary judgment ruling, the court concluded that it had not granted Nieblas permission to untimely file his claim under the savings statute. We agree.

¶49      The savings statute, A.R.S. § 12-504(A), allows plaintiffs, "in some circumstances, [to] refile terminated actions without regard to the statute of limitations." *Passmore*, 242 Ariz. at 291 ¶ 7. Generally, it applies to claims filed within the statutory period and subsequently dismissed. *See Jepson v. New*, 164 Ariz. 265, 270–75 (1990) (discussing the history and underlying purposes of the savings statute).

¶50      Whether the savings statute allows a party to refile as of right or instead with permission turns on the reason why a party's prior lawsuit was dismissed. *Schwartz v. Ariz. Primary Care Physicians*, 192 Ariz. 290, 294 ¶ 14 (App. 1998). The superior court must allow a plaintiff to refile claims dismissed in an earlier action when that action was: (1) commenced within the applicable statutory period; and (2) terminated for reasons other than certain enumerated reasons, like lack of prosecution. A.R.S. § 12-504(A); *see also Jepson*, 164 Ariz. at 271. If the earlier action was dismissed for lack of

prosecution, the superior court has discretion to allow the claims to be refiled. A.R.S. § 12-504(A); *see also Jepson*, 165 Ariz. at 271.

¶51 Nieblas does not dispute that he included his breach/negligence claim in his First Lawsuit and that the court dismissed that Lawsuit for lack of prosecution. Nieblas therefore needed the court's permission under the savings statute to refile his breach/negligence claim. *See* A.R.S. § 12-504(A).

¶52 Nieblas claims the court granted him permission under the savings statute when it granted him leave to amend his complaint in the Second Lawsuit. Nieblas contends the court must have granted him permission because the only authority he relied on to amend his breach/negligence claim was the savings statute. So by granting leave to amend, the court necessarily granted him permission to re-file under the savings statute.

¶53 Nieblas overinflates what a court considers when deciding whether to grant leave to amend. Under Arizona Rule of Civil Procedure 15, a court must grant leave to amend unless the "unless the court finds undue delay in the request, bad faith, undue prejudice, or futility in the amendment." *MacCollum v. Perkinson*, 185 Ariz. 179, 185 (App. 1996). On the other hand, whether to grant relief under the savings statute requires "a case-by-case application and evaluation[,]" focusing on the plaintiff's diligence. *Jepson*, 164 Ariz. at 271–72.

¶54 Nothing in the court's minute entry granting Nieblas leave to amend can be read as granting Nieblas leave under the savings statute. As Nieblas acknowledged, the court did not make any express reference or determination regarding the savings statute. The superior court never conducted such an analysis because Nieblas never asked it to. And BCL did not respond to Nieblas' request for leave to amend, so it did not raise the issue. The court's silence on the savings statute is not surprising. A motion for leave to amend is not the proper vehicle to ask the superior court for permission to file an untimely claim under the savings statute. If Nieblas wanted to assert such a claim, he should have asked for permission to do so when he filed his original complaint in the Second Lawsuit. And in any event, the court did not understand the order on Nieblas' motion for leave to amend as granting permission to file under the savings statute. We agree with the court's interpretation of its own order. Because Nieblas never received permission under the savings statute to file his untimely breach/negligence claim, the court did not err in granting summary judgment on that claim for BCL.

### III. Attorney Fees and Costs to BCL

¶55 Nieblas challenges the court's award of attorney fees and costs and its denial of his motion to strike BCL's errata. Nieblas argues (1) the court erred by granting BCL's untimely motion because he was not afforded an opportunity to respond and BCL did not seek relief as required under Arizona Rule of Civil Procedure 6(b)(1)(B); and (2) the factors in A.R.S. § 12-350 do not support the court's award.

¶56 The court may consider an untimely motion when the moving party shows excusable neglect. Ariz. R. Civ. P. 6(b)(1)(B). Excusable neglect is neglect or inadvertence that "might be the act of a reasonably prudent person under the same circumstances." *Smith & Wesson Corp. v. The Wuster*, 243 Ariz. 355, 357 ¶ 9 (App. 2017). The moving party "has the burden of showing excusable neglect, . . . and the superior court has substantial discretion in determining whether that burden has been met." *Id.*

¶57 Here, BCL filed its motion four minutes after midnight on the day it was due. Although BCL did not formally move to allow the late filing, they explained in later filings why their motion was four minutes late. The court concluded it would consider the motion. Nieblas has not established that the court abused its discretion to do so. *See Findlay v. Lewis*, 172 Ariz. 343, 346 (1992) ("A trial court has broad discretion over the management of its docket. Appellate courts do not substitute their judgment for that of the trial court in the day-to-day management of cases."); *Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 224 Ariz. 60, 66 ¶ 24 (App. 2010) ("Whether to grant an extension of time is within the discretion of the court."). Nieblas complains the court did not afford him an opportunity to respond, but he does not explain how a four-minute delay in BCL's filing prevented him from responding in the time permitted.

¶58 BCL also attached the wrong supporting materials to its motion. It later filed a notice of errata attaching the correct materials. Rather than respond to the errata, Nieblas moved to strike it. The superior court denied that request. Nieblas contends doing so was error.

¶59 A motion to strike is permitted only when "expressly authorized by statute or other rule, or if it seeks to strike any part of a filing or submission on the ground that it is prohibited, or not authorized, by a specific statute, rule, or court order." Ariz. R. Civ. P. 7.1(f)(1). There is no specific statute prohibiting a party from correcting materials attached in error to a motion for attorney fees. If Nieblas thought BCL's errata put him

at a disadvantage in responding to BCL's request for attorney fees, he should have opposed the errata on the merits or asked for leave to make additional arguments responding to the new materials (he did neither). The court did not err in denying Nieblas' motion to strike.

¶60 Nieblas also argues the superior court's award under § 12-349(A)(3) should be reversed because it was not supported by the factors in § 12-350. For an award of attorney fees under A.R.S. § 12-349, we review the superior court's findings of fact for clear error, and we review de novo the court's application of the statute. *Fisher ex rel. Fisher v. Nat'l Gen. Ins. Co.*, 192 Ariz. 366, 370 ¶ 13 (App. 1998). Under A.R.S. § 12-349(A)(3), "the court shall assess reasonable attorney fees [and] expenses . . . against an attorney or party" when they "[u]nreasonably expand[] or delay[] the proceeding." The court must "set forth the specific reasons for the award," but such findings "need only be specific enough to allow an appellate court to test the validity of the judgment." *Bennett v. Baxter Group, Inc.*, 223 Ariz. 414, 421 ¶ 28 (App. 2010); A.R.S. § 12-350.

¶61 Here, the court found Nieblas unreasonably expanded litigation over a $6,500 overpayment that should have been resolved by "spending a few thousand dollars" on uncomplicated motion practice. But because of Nieblas' conduct, BCL spent "tens of thousands of dollars [and] over four years of litigation defending against meritless claims."

¶62 Nieblas maintains he had a "legitimate reason to file suit" and there was only "minor additional briefing" in the Second Lawsuit. But the court's award was based on Nieblas escalating matters by asserting claims in the Second Lawsuit that were time-barred and lacking evidentiary support. The court acknowledged there was a reasonable dispute between the parties about overpayment. But the Second Lawsuit was "necessitated" because of Nieblas' failure to prosecute the First Lawsuit.

¶63 The court concluded that Nieblas' fraud and breach/negligence claims were not only unsuccessful, but "time-barred" and lacked "any evidentiary support." It further found that he failed to present "evidence that would support a wrongful lis pendens claim." Despite that BCL sought its fees incurred in both the First and Second Lawsuit, the court only awarded BCL fees incurred in the Second Lawsuit.

¶64 Nieblas has not shown that the superior court failed to properly consider the relevant factors. *See* A.R.S. § 12-350. Having reviewed the record, we conclude the superior court's findings are not

clearly erroneous and the record supports the court's award.  *See* A.R.S. § 12-349(A)(3).

## ATTORNEY FEES AND COSTS ON APPEAL

**¶65**        BCL requests attorney fees and costs on appeal under A.R.S. § 12-349.  BCL does not adequately explain why we should impose appellate fees against Nieblas under § 12-349.  In any event, exercising our discretion, we decline to award BCL their appellate attorney fees.  But as the successful party on appeal, BCL is awarded their taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶66**        We affirm the judgment.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:            JR